**No. 26-1257**

# In the United States Court of Appeals for the First Circuit

ROBINHOOD DERIVATIVES, LLC,

*Plaintiff-Appellant,*

*v.*

ANDREA JOY CAMPBELL, in the official capacity as Attorney General of the Commonwealth of Massachusetts; JORDAN MAYNARD, in the official capacity as Chair of the Massachusetts Gaming Commission; EILEEN O'BRIEN, in the official capacity as Commissioner of the Massachusetts Gaming Commission; BRADFORD R. HILL, in the official capacity as Commissioner of the Massachusetts Gaming Commission; NAKISHA SKINNER, in the official capacity as Commissioner of the Massachusetts Gaming Commission; PAUL BRODEUR, in the official capacity as Commissioner of the Massachusetts Gaming Commission,

*Defendants-Appellees.*

*On appeal from the United States District Court for the District of Massachusetts, No. 1:25-cv-12578, Hon. Richard G. Stearns*

**BRIEF OF PLAINTIFF-APPELLANT ROBINHOOD DERIVATIVES, LLC**

NICHOLAS J. SCHNEIDER
CRAIG R. WAKSLER
ECKERT SEAMANS CHERIN & MEL-
LOTT LLC
 *2 International Plaza, 16th Fl.*
 *Boston, MA 02110*

LISA S. BLATT
AMY MASON SAHARIA
NOAH C. MCCULLOUGH
KATHARINE E.W. PINCUS
WILLIAMS & CONNOLLY, LLP
 *680 Maine Avenue, S.W.*
 *Washington, DC 20024*
 *(202) 434-5000*
 *lblatt@wc.com*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1(a), Appellant Robinhood Derivatives, LLC, by its undersigned counsel, hereby makes the following disclosure:

Appellant Robinhood Derivatives, LLC is a wholly owned subsidiary of Robinhood Markets, Inc., a publicly held corporation.  There is no other publicly held corporation that owns 10% or more of Robinhood Derivatives, LLC's or Robinhood Markets, Inc.'s stock.

i

**TABLE OF CONTENTS**

Page

JURISDICTIONAL STATEMENT ................................................................1

STATEMENT OF THE ISSUES ...................................................................1

INTRODUCTION ..........................................................................................1

STATEMENT OF THE CASE .......................................................................5

    A.     Legal Background.............................................................................5

    B.     Factual Background ........................................................................11

    C.     Procedural Background ...................................................................13

        1.     The KalshiEX enforcement proceedings.............................13

        2.     The Robinhood proceedings ...................................................14

SUMMARY OF ARGUMENT.......................................................................20

STANDARD OF REVIEW ............................................................................24

ARGUMENT .................................................................................................25

I.     Robinhood's Claim Is Ripe.......................................................................25

    A.     Robinhood's Claim Is Fit for Adjudication ..................................26

        1.     Robinhood's claim is constitutionally fit............................27

        2.     Robinhood's claim is prudentially fit ..................................31

    B.     Robinhood's Claim Satisfies the Hardship Prong........................32

    C.     Defendants' Stipulations Do Not Render Robinhood's Claim Unripe .....................................................................................34

II.     Robinhood Has Article III Standing........................................................43

CONCLUSION...............................................................................................48

# TABLE OF AUTHORITIES

Page

## CASES

*Abbott Lab'ys v. Gardner*, 387 U.S. 136 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) ...................................25

*Algonquin Gas Transmission, LLC v. Weymouth*, 919 F.3d 54 (1st Cir. 2019) .......................................................25, 26, 27, 31

*Blue Lake Rancheria v. Kalshi Inc.*, 2025 WL 3141202 (N.D. Cal. Nov. 10, 2025)....................................................9

*Blum v. Holder*, 744 F.3d 790 (1st Cir. 2014) .................................................36

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)..................................16

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987)..........................................42

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)....................................................................17, 40

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)......................................25

*Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530 (1st Cir. 1995) ............................................................26, 31

*Ex parte Young*, 209 U.S. 123 (1908)............................................................2, 14

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)............40

*Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27 (1st Cir. 2020)..................36

*Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024)........47

*FTC v. Ken Roberts Co.*, 276 F.3d 583 (D.C. Cir. 2001) .....................................6

*Gonzalez v. United States*, 284 F.3d 281 (1st Cir. 2002) .................................24

*Hunter v. Fed. Energy Regul. Comm'n*, 711 F.3d 155 (D.C. Cir. 2013)............6

*Jensen v. R.I. Cannabis Control Comm'n*, 160 F.4th 18 (1st Cir. 2025).................................................................*passim*

*KalshiEX LLC v. Flaherty*, 2025 WL 1218313 (D.N.J. Apr. 28, 2025) ............9

*KalshiEX LLC v. Johnson*, __ F. Supp. 3d __, 2026 WL 1223373 (D. Ariz. May 5, 2026) ...............8, 9, 11

*KalshiEX LLC v. Martin*, 793 F. Supp. 3d 667 (D. Md. 2025)..........................9

*KalshiEX LLC v. Orgel*, 2026 WL 474869 (M.D. Tenn. Feb. 19, 2026).........8, 9

*KalshiEX LLC v. Schuler*, 2026 WL 1295806 (6th Cir. Apr. 24, 2026)..............9

*KalshiEX, LLC v. Flaherty*, 172 F.4th 220 (3d Cir. 2026).......................*passim*

*KalshiEX, LLC v. Hendrick*, 817 F. Supp. 3d 1014 (D. Nev. 2025)...................9

*KalshiEX, LLC v. Schuler*, 2026 WL 657004 (S.D. Ohio Mar. 9, 2026)............9

*Leist v. Simplot*, 638 F.2d 283 (2d Cir. 1980)...................................................7

*Maldonado-Cabrera v. Anglero-Alfaro*, 26 F.4th 523 (1st Cir. 2022) ............40

Page

Cases—cont'd:

*Mangual v. Rotger-Sabat*, 317 F.3d 45 (1st Cir. 2003)..........................30, 31, 32

*McClellan v. Carland*, 217 U.S. 268 (1910)......................................................40

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
    456 U.S. 353 (1982)........................................................................5

*N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705 (4th Cir. 1999).....................36

*N.H. Hemp Council, Inc. v. Marshall*, 203 F.3d 1 (1st Cir. 2000)....................35

*N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38 (1st Cir. 2021)....................*passim*

*N.H. Right to Life Pol. Action Comm. v. Gardner*,
    99 F.3d 8 (1st Cir. 1996) ...............................................................45, 47

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003) .....................25

*O'Neil v. Canton Police Dep't*, 116 F.4th 25 (1st Cir. 2024)..............................44

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev.
    Comm'n*, 461 U.S. 190 (1983)........................................................31, 34

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) ...............36

*R&D Master Enters., Inc. v. Fin. Oversight & Mgmt. Bd. for P.R.*,
    75 F.4th 41 (1st Cir. 2023).............................................................43

*R.I. Ass'n of Realtors, Inc. v. Whitehouse*,
    199 F.3d 26 (1st Cir. 1999) ........................................................*passim*

*Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017).....................................30, 35, 36, 46

*Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685 (1st Cir. 1994)......33

*Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025).......................42

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)..............................................43, 47

*Stern v. U.S. Dist. Ct. for the Dist. of Mass.*,
    214 F.3d 4 (1st Cir. 2000) .......................................................26, 33, 44

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)........................*passim*

*Taylor v. Sturgell*, 553 U.S. 880 (2008)...................................................38

*The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22 (1913).............................42

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985) ............31, 34

*Verizon N. Eng. v. R.I. Dep't of Lab. & Training*,
    723 F.3d 113 (1st Cir. 2013) .......................................................41

*Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*,
    915 F.2d 7 (1st Cir. 1990) ..........................................................41

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)..............................................16

*Younger v. Harris*, 401 U.S. 37 (1971).....................................................16, 41

iv

## STATUTES AND RULES

U.S. Const. Art. III, § 2...................................................................................25

7 U.S.C.

§ 1a..............................................................................................6, 7, 12

§ 2a.................................................................................................6, 7

§ 6c....................................................................................................6

§ 7.....................................................................................................12

§ 7a...................................................................................................10

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1331 ...........................................................................................1

Pub. L. No. 74-675, 49 Stat. 1491 (1936)....................................................6

Mass. Gen. Laws ch. 23N

§ 5......................................................................................13, 24, 28, 45

§ 21.................................................................................................15

17 C.F.R.

§ 40.2.................................................................................................10

§ 40.3.................................................................................................10

§ 40.11...............................................................................................10

## OTHER AUTHORITIES

H.R. Rep. No. 93-975 (1974) ........................................................................6

H.R. Rep. No. 93-1383 (1974) ..................................................................6, 7

John V. Rainbolt II, *Regulating the Grain Gambler and His Successors*, 6 Hofstra L. Rev. 1 (1977).................................................6

Justin Wolfers & Eric Zitzewitz, *Prediction Markets*, J. Econ. Persp. 107 (2004)..................................................................5

YAHOO! FIN. (Apr. 28, 2026), https://finance.yahoo.com/quote/7KY.MU/earnings/7KY.MU-Q1-2026-earnings_call-554727.html................................................................13

91 Fed. Reg. 12516 (Mar. 16, 2026)..........................................................10

## JURISDICTIONAL STATEMENT

The district court (Stearns, J.) had subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because Appellant Robinhood Derivatives, LLC brought its claim under federal law.

This Court has jurisdiction under 28 U.S.C. § 1291. The district court entered an order dismissing this case on March 13, 2026, Add.7, and Robinhood timely filed a notice of appeal that same day, JA164. *See* Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

I. Whether the district court erred by dismissing this case as unripe.

II. Whether Robinhood has Article III standing.

## INTRODUCTION

Appellant Robinhood Derivatives, LLC and its affiliates democratize finance by providing everyday investors with safe and affordable access to financial markets. As part of this mission, in March 2025, Robinhood launched a prediction markets hub for customers to place orders for event contract trades to be executed on KalshiEX, LLC, a federally designated contract market ("DCM").

In September 2025, the Massachusetts Attorney General initiated a civil enforcement action in Massachusetts state court against KalshiEX for allegedly engaging in sports wagering without a license in violation of Massachusetts law. Massachusetts' complaint alleged that Robinhood has "partnered" with KalshiEX and that roughly $1 billion in such contracts "were traded on Robinhood" in a single quarter. Obviously concerned that this reference to Robinhood in the Commonwealth's complaint foreshadowed a future enforcement action, Robinhood initiated this *Ex parte Young* action against the Massachusetts Attorney General and the Chair and Commissioners of the Massachusetts Gaming Commission, seeking a declaration that the federal Commodity Exchange Act preempts enforcement of Massachusetts' sports-wagering laws as to event contracts traded on a DCM and injunctive relief.

The district court dismissed the case as unripe based on Defendants' two stipulations that they would temporarily refrain from pursuing an enforcement action against Robinhood while Massachusetts litigated its case against KalshiEX in state court. Defendants' first stipulation covered trading on KalshiEX's DCM and invited the district court to defer to the state-court proceeding in *KalshiEX* so that the "predicate legal issues" could be resolved there first as a matter of "judicial economy." JA30. After Robinhood amended

2

its complaint to allege it had partnered with a second DCM, ForecastEx LLC, Defendants again filed a materially identical stipulation extending to trades on that DCM as well.

The district court's dismissal cannot be reconciled with this Court's ripeness precedents. A case is ripe if it satisfies "two prongs: fitness and hardship." *Jensen v. R.I. Cannabis Control Comm'n*, 160 F.4th 18, 24 (1st Cir. 2025) (citation omitted). That test is plainly satisfied here. Robinhood's preemption challenge is fit for adjudication because it presents a purely legal issue and is sufficiently definite—after all, since March 2025 Robinhood has engaged in conduct that Massachusetts has proclaimed violates state law. And withholding adjudication imposes an obvious hardship on Robinhood by forcing it to choose between abandoning its lawful, federally regulated business that serves more than 41,000 Massachusetts customers or continuing to operate under the imminent threat of an enforcement action carrying significant civil and even criminal penalties and reputational harm.

The district court erred in relying on Defendants' stipulations to conclude otherwise. Notably, Defendants have not disavowed a future enforcement action against Robinhood, and their promises of *temporary* forbearance do not render Robinhood's claims unripe. Defendants' stipulations

3

do not even cover Robinhood's concrete, near-term plan to offer sports-related event contracts on an affiliated DCM, a fact that the district court completely overlooked.

No legitimate basis exists to require Robinhood to wait for resolution of a state-court proceeding—to which it is not even a party—to litigate this federal question in federal court. The district court's refusal to consider the case on the merits forces Robinhood to operate under the sort of "dangling sword" of enforcement that this Court has recognized plaintiffs "should not have to operate under." *N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 53 (1st Cir. 2021). And while the district court did not purport to apply any recognized abstention doctrine, its approach to ripeness would eviscerate key limits on federal courts' ability to abstain from exercising their jurisdiction when similar litigation is pending in state court.

The Court should reverse the judgment and instruct the district court to resolve the federal question that Robinhood raised in its pre-enforcement challenge: whether the Commodity Exchange Act preempts Massachusetts' attempt to regulate event contracts traded on a DCM.

4

## STATEMENT OF THE CASE

### A.    Legal Background

1.    This case is one of a series of cases around the country challenging States' authority over event contracts traded on exchanges regulated by the Commodity Futures Trading Commission ("CFTC").  Event contracts are "a type of derivative."  *KalshiEX, LLC v. Flaherty*, 172 F.4th 220, 224 (3d Cir. 2026).  "Derivatives are financial tools that mitigate risk and derive their value from some underlying asset."  *Id.*  Event contracts identify a future "event with multiple possible outcomes, a payment schedule for those outcomes, and an expiration date."  *Id.* at 224-25 (citation omitted).  An event contract's market value "fluctuates" based on the market's "perceptions about the "event's likelihood."  *Id.* at 225 (citation omitted).  Accordingly, trades on these contracts provide "extremely useful" information regarding "the market's expectation[s] of certain events."  Justin Wolfers & Eric Zitzewitz, *Prediction Markets*, 18 J. Econ. Persp. 107, 124 (2004).

2.    Robinhood's complaint alleges that the trading of event contracts is governed by the Commodity Exchange Act, Congress' "comprehensive regulatory structure" for the "futures trading complex."  *Merrill Lynch, Pierce,*

*Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 356 (1982) (quoting H.R. Rep. No. 93-975, at 1 (1974)); *see* JA75-82.

Congress first enacted the Commodity Exchange Act in 1936.  Pub. L. No. 74-675, 49 Stat. 1491, 1491 (1936).  However, the Act initially only covered a small "fraction of commodity futures," *Hunter v. Fed. Energy Regul. Comm'n*, 711 F.3d 155, 157 (D.C. Cir. 2013), and did not "impair any State law applicable to any transaction" that the Act regulated, 7 U.S.C. § 6c (1940).  States thus could—and did—continue to "exercise control over commodities markets under their own statutes."  John V. Rainbolt II, *Regulating the Grain Gambler and His Successors*, 6 Hofstra L. Rev. 1, 13 (1977).

Because "this hodgepodge regulatory system" proved unsustainable, *Hunter*, 711 F.3d at 157, Congress amended the Act in 1974 to bring "*all* commodities under federal regulation," *FTC v. Ken Roberts Co.*, 276 F.3d 583, 588 (D.C. Cir. 2001); *see* 7 U.S.C. § 1a(9).  Congress also created the CFTC and vested it with "exclusive jurisdiction" over trading on federally designated "contract market[s]."  7 U.S.C. § 2(a)(1)(A).  And Congress struck the Act's prior preservation of "State law[s] applicable to any transaction" covered by the Act.  H.R. Rep. No. 93-1383, at 35 (1974) (Conf. Rep.).  With these changes,

6

Robinhood contends, Congress "preempt[ed] the field insofar as futures regulation is concerned," H.R. Rep. No. 93-1383, at 35, as courts soon confirmed, *see, e.g.*, *Leist v. Simplot*, 638 F.2d 283, 322 (2d Cir. 1980) (Friendly, J.) ("[T]he [Commodity Exchange Act] preempts the application of state law.").

Congress further broadened the Act's reach in 2010, as part of the Dodd-Frank Act. Congress amended the Act to "expand[] the CFTC's exclusive jurisdiction" to encompass "a new class of futures known as 'swaps.'" *KalshiEX*, 172 F.4th at 226 (quoting 7 U.S.C. § 2(a)(1)(A)). The Act defines "swap" to extend to "any agreement, contract, or transaction … that provides for any … payment[] or delivery … that is dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence." 7 U.S.C. § 1a(47)(A), (A)(ii). As Robinhood contends, and as the Third Circuit recently determined, this definition includes "event contracts." *KalshiEX*, 172 F.4th at 226.

3.    Some States (including Massachusetts) disagree with this reading of the Commodity Exchange Act. Several States have sent "cease-and-desist letters" to DCMs and entities (like Robinhood) that offer customers the opportunity to trade on DCMs, threatening civil or criminal penalties under state

"gambling law[s]." *See, e.g.*, *KalshiEX LLC v. Orgel*, 2026 WL 474869, at *1-2 (M.D. Tenn. Feb. 19, 2026) (collecting examples), *appeal docketed*, No. 26-5235 (6th Cir. Mar. 23, 2026). Others have filed enforcement actions seeking to bar companies, including Robinhood, from "making sports-related event contracts available" to the public, claiming they constitute "criminal gambling" under state law. *See, e.g.*, Compl. at 3, 33, *State v. Kalshi, Inc.*, No. 2026-cv-001284 (Wis. Cir. Ct. Dane Cnty. Apr. 23, 2026). Arizona even filed "a twenty-count criminal information" against a DCM.[1] *KalshiEX LLC v. Johnson*, __ F. Supp. 3d __, 2026 WL 1223373, at *1 (D. Ariz. May 5, 2026), *appeal docketed*, No. 26-2978 (9th Cir. May 11, 2026).

Federal courts are divided over the lawfulness of these efforts. The Third Circuit and various district courts have concluded that "sports-related event contracts" on DCMs are likely "subject to the exclusive jurisdiction of the CFTC," and that the Commodity Exchange Act likely "preempts other-wise applicable state laws that purport to regulate such contracts." *KalshiEX*,

---

[1] A federal court subsequently enjoined the prosecution on the ground that the Commodity Exchange Act likely "preempts … enforcement of [state] gambling laws against DCM operators offering event contracts." *Johnson*, 2026 WL 1223373, at *9; *see infra* pp. 10-11.

172 F.4th at 228, 231 n.6 (collecting cases).[2]  But several district courts have reached the opposite conclusion, concluding that state "laws regulating sports betting" likely are not "preempted by the Commodity Exchange Act."[3] *KalshiEX LLC v. Martin*, 793 F. Supp. 3d 667, 675 (D. Md. 2025), *appeal docketed*, No. 25-1892 (4th Cir. Aug. 6, 2025).

4.     In the meantime, the CFTC has made its position clear:  these state laws are preempted because "sports event contracts fall comfortably within the [Commodity Exchange Act's] reach."  *See, e.g.*, CFTC Amicus Br. at 29, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17,

---

[2] *See, e.g.*, *Orgel*, 2026 WL 474869, at *7; *Blue Lake Rancheria v. Kalshi Inc.*, 2025 WL 3141202, at *7 (N.D. Cal. Nov. 10, 2025), *appeal docketed*, No. 25-7504 (9th Cir. Nov. 28, 2025); *KalshiEX LLC v. Flaherty*, 2025 WL 1218313, at *6 (D.N.J. Apr. 28, 2025); *Johnson*, 2026 WL 1223373, at *5-7.

[3] *See, e.g.*, *KalshiEX, LLC v. Schuler*, 2026 WL 657004, at *4-10 (S.D. Ohio Mar. 9, 2026), *appeal docketed*, No. 26-3196 (6th Cir. Mar. 11, 2026); *KalshiEX, LLC v. Hendrick*, 817 F. Supp. 3d 1014, 1024-34 (D. Nev. 2025), *appeal docketed*, No. 25-7516 (9th Cir. Nov. 28, 2025).  The Sixth Circuit also recently denied a motion by KalshiEX to enjoin enforcement of Ohio's gaming laws pending appeal.  *See KalshiEX LLC v. Schuler*, 2026 WL 1295806, at *1, *3 (6th Cir. Apr. 24, 2026) ("find[ing] the preemption arguments largely in equipoise" but "deny[ing] Kalshi's request for an injunction pending appeal").

9

2026), ECF No. 38.2. The CFTC has approved various "sporting event[]" contracts on DCMs.[4] *Prediction Markets*, 91 Fed. Reg. 12516, 12517 n.9 (Mar. 16, 2026); *see KalshiEX*, 172 F.4th at 227. The CFTC recently issued an advance notice of proposed rulemaking regarding "event contract derivatives" that invites public comment on the "scope and public interest implications" of event contracts concerning "sports competition." *Prediction Markets*, 91 Fed. Reg. at 12516, 12521.

And the CFTC has sought to block States' "attempt[s] to … intrude[]" on the CFTC's "exclusive jurisdiction" by initiating lawsuits that seek injunctive relief against attempts to enforce "state laws" against "CFTC-regulated 'Designated Contract Markets.'" *See, e.g.*, Compl. at 4, *United States v. Arizona*, No. 26-cv-02246 (D. Ariz. Apr. 2, 2026), ECF No. 1.[5] Notably, the CFTC

---

[4] These contracts were approved pursuant to the Commodity Exchange Act's self-certification process, which enables DCMs to list contracts by self-certifying their compliance with CFTC requirements. 7 U.S.C. § 7a-2(c)(1), (c)(4)(A); 17 C.F.R. §§ 40.2(a), 40.3(a). By statute, the CFTC "shall approve" such contracts unless it finds they would violate the Commodity Exchange Act or applicable regulations. 7 U.S.C. § 7a-2(c)(5)(B). By regulation, the CFTC "may stay the listing of a contract" pending investigation into a potential "false certification," 17 C.F.R. § 40.2(c), or subject a contract to a 90-day review period if it determines that the contract may be subject to the Act's special rule, *id.* § 40.11(c).

[5] *See also* Compl., *United States v. Illinois*, 1:26-cv-03659 (N.D. Ill Apr. 2, 2026), ECF No. 1; Compl., *United States v. Connecticut*, 3:26-cv-00498 (D.

10

recently secured a preliminary injunction barring Arizona from taking "criminal or civil enforcement actions related to event contracts listed on CFTC-regulated designated contract markets." *Johnson*, 2026 WL 1223373, at *9.

### B.     Factual Background

Robinhood is a subsidiary of Robinhood Markets, Inc.  JA61.  Robinhood Markets and its subsidiaries seek to democratize finance by removing barriers to financial markets so that individuals can access these markets directly. JA61; JA73; JA76.  By offering zero-commission stock trading and easy-to-use applications, the Robinhood companies provide everyday investors with an accessible entry point to financial services.  JA61; JA76.  The companies' commitment to low fees, coupled with intuitive user experience and powerful tools, empowers customers to safely and efficiently navigate financial markets. JA61-62; JA76.

Consistent with that mission, on March 17, 2025, Robinhood launched a prediction markets hub through which customers can place orders for event

---

Conn. Apr. 2, 2026), ECF No. 1; Compl., *United States v. New York*, No. 1:26-cv-3404 (S.D.N.Y. Apr. 24, 2026), ECF No. 1; *United States v. Wisconsin*, No. 2:26-cv-749 (E.D. Wis. Apr. 28, 2026), ECF No. 1; *United States v. Minnesota*, No. 26-cv-2661 (D. Minn. May 19, 2026), ECF No. 1.

contract trades.[6]  JA77.  Robinhood is registered with the CFTC as a futures commission merchant ("FCM"), meaning it "solicits or accepts orders to buy or sell futures and swaps and accepts payment from customers to support such orders."  JA76; *see* 7 U.S.C. § 1a(28).  Although Robinhood customers submit buy and sell orders through their Robinhood accounts, trades are executed on a DCM, which is an exchange approved by the CFTC for such trading.  JA76-77; *see* 7 U.S.C. §  7.

As relevant here, Robinhood has partnered with two DCMs that operate exchanges on which event contract trades are executed.  When Robinhood first launched its prediction markets hub, all of its sports-related event contracts were traded on KalshiEX's DCM.  JA77.  On November 17, 2025, Robinhood began offering some sports-related event contract trading on the exchange operated by ForecastEx, another DCM.  JA77; JA162.  However, ForecastEx has since ceased offering sports-related event contracts.  JA162.

Robinhood is actively working to be able to offer event contracts on other DCMs.  JA162.  In particular, Robinhood is preparing to launch event contract trading through Rothera, an affiliated DCM.  On January 20, 2026, a

---

[6] Before this launch, Robinhood had offered event contracts in 2024 related to the outcome of that year's presidential election.  JA77.

joint venture between Robinhood's parent company, Robinhood Markets and Susquehanna International Group acquired 90% of the equity in Rothera Exchange and Clearing LLC, a DCM. JA162. As Robinhood averred in the proceedings below and recently confirmed, Robinhood plans to begin offering sports-related event contracts through Rothera by June 2026. JA162.[7]

### C. Procedural Background

#### 1. *The KalshiEX enforcement proceedings*

On September 12, 2025, the Massachusetts Attorney General sued KalshiEX in Massachusetts state court for engaging in "activity in connection with sports wagering in the commonwealth" without a license. Mass. Gen. Laws ch. 23N, § 5(a); *see* JA101-43. The Attorney General sought monetary relief and to permanently enjoin KalshiEX from this conduct. JA142. The Attorney General's complaint emphasized that "Kalshi's contracts are not limited to Kalshi's platform," with "[a]pproximately $1 billion worth of Kalshi wagers" being traded on Robinhood during the second quarter of 2025. JA137.

---

[7] *See Robinhood Markets Inc. R (7KY.MU) Q1 FY2026 earnings call transcript,* YAHOO! FIN. (Apr. 28, 2026), https://finance.yahoo.com/quote/7KY.MU/earnings/7KY.MU-Q1-2026-earnings_call-554727.html ("Looking at prediction markets specifically, we're really spending time getting ready for the Q2 launch of our JV with Susquehanna. This is our exchange, Rothera, and that's coming later this quarter, so very excited about that.").

The Attorney General also sought an emergency preliminary injunction to enjoin KalshiEX from "continuing to engage in sports wagering in the Commonwealth." JA145.

Following KalshiEX's unsuccessful attempt to remove the case to federal district court, the Massachusetts Superior Court granted the Commonwealth's motion for a preliminary injunction, enjoining KalshiEX from "[o]ffering … or otherwise facilitating any contract, instrument or product that is a wager on sporting events," as statutorily defined, "to any person located in Massachusetts." *Commonwealth v. KalshiEX LLC*, No. 2584-CV-02525 (Mass. Super. Ct. Feb. 6, 2026), Dkt. No. 57 at 1-2.

KalshiEX appealed, and the appellate court stayed the injunction during the pendency of those proceedings. *Commonwealth v. KalshiEX LLC*, 2026-J-0143 (Mass. App. Ct. Feb. 17, 2026).  The Massachusetts Supreme Judicial Court heard argument on May 4, 2026.

### 2.    *The Robinhood proceedings*

a.    Recognizing that a suit against it similar to the Commonwealth's suit against KalshiEX would represent a serious threat to its customers and business, on September 15, 2025, one business day after the Commonwealth's suit, Robinhood commenced this action under *Ex parte Young*, 209 U.S. 123

(1908), against the Massachusetts Attorney General and the Chair and Commissioners of the Massachusetts Gaming Commission. *See* JA1-28. Robinhood sought declaratory and injunctive relief, as well as a preliminary injunction to restrain Defendants from enforcing against Robinhood any Massachusetts law that attempts to regulate Robinhood's offering of sports-related event contracts traded on a DCM. JA27; *see* Dist. Ct. Dkt. 10.

The complaint explained that Robinhood faced an immediate, concrete threat of enforcement. Robinhood pointed to the Commonwealth's complaint in *KalshiEX*, which highlighted Robinhood's relationship with KalshiEX and its role in offering sports-related event contracts—the same behavior that prompted the Commonwealth to sue KalshiEX. JA137; *see* JA12-13. Robinhood's complaint further explained that a similar enforcement action against Robinhood could result in "a civil penalty not to exceed $2,000 for each violation or $5,000 for violations arising from the same series of events." Mass. Gen. Laws ch. 23N, § 21; *see* JA22. Additionally, the complaint observed that the Commonwealth's position could subject Robinhood to criminal fines. JA22. Robinhood also would face significant reputational harm, with an enforcement action threatening Robinhood's goodwill with its customers. *See* JA23.

15

Two days after moving to remand the *KalshiEX* case to state court, *see supra* pp. 13-14, Defendants filed a unilateral "stipulation of non-enforcement" in this case, asserting that Defendants would not bring an "enforcement action against Robinhood based on Robinhood's facilitation of Massachusetts customers' orders in sports-related event contracts" on KalshiEX's exchange until the pending motion for a preliminary injunction in *KalshiEX* and Robinhood's pending motion for a preliminary injunction in this case were decided. JA30. According to Defendants, "this sequencing promotes judicial economy" by resolving "predicate legal issues … already being litigated in" *KalshiEX* "before any enforcement decisions concerning Robinhood." JA29-30. Defendants reserved the right to withdraw the stipulation and initiate a "civil or criminal enforcement action against Robinhood" if either motion remained unresolved after eighteen months. JA30-31.

Two weeks later, Defendants moved to dismiss Robinhood's complaint or, in the alternative, stay the proceedings pending resolution of *KalshiEX*, invoking their own stipulation to argue that Robinhood lacked standing and its claims were unripe. Dist. Ct. Dkt. 37 at 10. Defendants also claimed that the abstention doctrines of *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), *Younger v.*

*Harris*, 401 U.S. 37 (1971), and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), independently counseled dismissal. *Id.* at 13-20.

In granting Defendants' motion to dismiss, the district court "beg[an] (and end[ed]) its analysis with the issue of ripeness." Add.2. Based on Defendants' stipulation, the court concluded there was "no risk that the Commonwealth will engage in the conduct which Robinhood alleges to be unlawful prior to a decision being issued by a state court of competent jurisdiction" in *KalshiEX*. Add.4. The court also posited that Defendants' actions after the state court's ruling in *KalshiEX* "depend[ed] entirely on what that decision proves to be." Add.4. And the court believed that, "because the threat of enforcement" was contingent on the state court's decision in *KalshiEX*, any hardship Robinhood may suffer was "also necessarily contingent," rendering the matter unripe. Add.5. The court therefore granted Defendants' motion to dismiss and denied Robinhood's motion for a preliminary injunction as moot. Add.5.

b.    Robinhood moved for reconsideration. As relevant here, Robinhood explained that, in addition to executing trades on KalshiEX's DCM, it had expanded to trading sports-related event contracts on another DCM,

17

ForecastEx. JA62. Robinhood also pointed to additional evidence of Defendants' commitment to regulating the offering of sports-related event contracts, specifically, a November 13, 2025 letter that the Massachusetts Gaming Commission sent to Massachusetts sports wagering licensees. JA67. In that letter, the Commission reiterated its view that "wagering on sporting events may only be offered on authorized sports wagering platforms licensed by the Commission." JA67. The Commission also threatened licensees with revocation of their licenses if they offered "sports-related event contracts in Massachusetts, directly or via an affiliate, related business entity, or other association, or direct[ed] patrons to such event contracts being offered in Massachusetts." JA67.

The district court granted Robinhood's motion, reasoning that its dismissal order "was premised on Robinhood offering sports wagering only through the Kalshi DCM," and permitted Robinhood to file an amended complaint. JA69. Robinhood timely amended its complaint and once again moved for a preliminary injunction. *See* JA70-99; Dist. Ct. Dkt. 89.

Defendants responded by filing a second stipulation, attesting that the Massachusetts Attorney General would not "file or maintain any civil or criminal enforcement action against Robinhood based on" its intermediating of

18

sports-related event contracts executed on KalshiEX's or ForecastEx's exchanges until after the state appellate court issued a decision in *KalshiEX* and the district court ruled on Robinhood's motion for a preliminary injunction. JA152. Once again, Defendants claimed that proceeding in state court would "promote[] judicial economy" based on "the Attorney General's belief that this sequencing" would permit "resolution of predicate legal issues … already being litigated in" *KalshiEX*. JA152. The Attorney General explicitly reserved the right to withdraw the stipulation, and thereby mount a "civil or criminal enforcement action against Robinhood," if either motion remained unresolved after eighteen months. JA152-53.

Defendants again moved to dismiss or, alternatively, stay the proceedings, reiterating their arguments that Robinhood's claim was unripe, Robinhood lacked standing, and abstention principles supported dismissal. *See* Dist. Ct. Dkt. 101-02.

Robinhood responded that the risk of enforcement remained imminent. Robinhood noted that the Commission had recently contacted two sports wagering vendors with which Robinhood's parent company partners. *See* JA156-57. The Commission sought information on entities those vendors have "business affiliations/agreements with that offer … Event Contracts" and required

19

the vendors "to identify such entities and the products/services" provided to them. JA160; *see* JA156-57. In a declaration, Robinhood's Chief Operating Officer further explained that, although ForecastEx had ceased offering sports-related event contracts, Robinhood was working to expand its offerings through other DCMs, including Rothera, its parent company's recent joint venture. JA162; *see supra* pp. 12-13.

The district court concluded (in a one-paragraph ruling) that, because Robinhood had "stopped offering sports-related event contracts through ForecastEx," it would grant the motion to dismiss "for the same reasons previously discussed." Add.6; *see* Add.7. Robinhood timely appealed. JA164.

## SUMMARY OF ARGUMENT

I.    The district court erred in dismissing Robinhood's claim as unripe. Robinhood's pre-enforcement challenge is paradigmatically ripe, satisfying both the fitness and hardship prongs of this inquiry.

A.    The threat of a future enforcement action against Robinhood is obvious, making its claim constitutionally fit for adjudication. Over a year ago, Robinhood began engaging in activity that Defendants unequivocally claim is proscribed by Massachusetts state law. The Massachusetts Attorney General's complaint in *KalshiEX* referenced Robinhood. It does not matter that

20

Robinhood is an FCM, while KalshiEX is a DCM; the statutory basis for the Commonwealth's enforcement action in *KalshiEX* makes no such distinction. The Commission also has not differentiated between these entities in warning of the state-law prohibition on offering sports-related event contracts.

Robinhood's claim is also prudentially fit for adjudication. Robinhood's preemption challenge is purely legal and will not be clarified by further factual development. Courts across the country have decided this question in the context of the likelihood-of-success prong of the preliminary injunction analysis without the need for further factual development.

B. Robinhood's claim easily satisfies the hardship prong of the ripeness analysis. Robinhood began offering sports-related event contracts over a year ago and has been rapidly expanding these operations. Delaying adjudication would force Robinhood to choose between offering these contracts on DCMs outside of Defendants' stipulations, thereby risking an enforcement action, or shuttering operations to the harm of its customers and business. That is not a hardship that Robinhood should be forced to bear.

C. Defendants' stipulations do not render Robinhood's claim unripe. Defendants have not disclaimed a belief that Robinhood's conduct violates Massachusetts gaming law. Nor have they disavowed a future enforcement

21

action against Robinhood.  The stipulations are thus, at most, a temporary offer of forbearance, which this Court has found insufficient to defeat a claim's ripeness.

The district court erred in concluding that Defendants' stipulations somehow make the threat of enforcement against Robinhood contingent on the outcome of the *KalshiEX* state-court action.  Robinhood is not even a party to the *KalshiEX* state-court action, and therefore is not bound by its outcome. The district court also completely overlooked that Robinhood is actively working to offer its customers the opportunity to trade sports-related event contracts on other DCMs, including an affiliated DCM that will launch imminently.

Despite framing its ruling as one of ripeness, the district court essentially abstained in favor of the state-court proceeding.  But because federal courts have an obligation to exercise the jurisdiction Congress has given them, abstention is only appropriate in certain limited circumstances.  The district court did not purport to apply any recognized abstention doctrine, and its approach to ripeness would weaken key limits on federal courts' authority to abstain from exercising their jurisdiction pending similar state-court litigation.

The district court's approach also would invite blatant forum-shopping. The stipulations here were plainly prompted by Defendants' preference to litigate this federal preemption question in state court. But that preference is irrelevant to justiciability. A contrary rule would allow defendants to override a plaintiff's chosen forum via manipulation of federal-court jurisdiction.

II.    Below, Defendants also challenged Robinhood's Article III standing. The district court did not address that question. If this Court considers the issue, Robinhood plainly has standing.

Robinhood has established an injury-in-fact based on the threat of future enforcement. That threat is particularly acute here, as Robinhood has already facilitated—and is committed to offering—sports-related event contract trading that Massachusetts believes is contrary to state law. And Defendants' history of enforcement against KalshiEX—in which Defendants noted that KalshiEX had "partnered" with Robinhood to allegedly violate state law—confirms that the threat of enforcement is not hypothetical.

Below, Defendants claimed there was no credible threat of enforcement against Robinhood because Robinhood is an FCM and not a DCM and because Defendants have offered a temporary stipulation of non-enforcement. But Defendants have not explained why their distinction between FCMs and DCMs

23

would make a difference, especially since Massachusetts law prohibits "any activity" connected with sports wagering without a license.  Mass. Gen. Laws ch. 23N, § 5(a).  Defendants' stipulations eliminate *no* risk of enforcement as to the additional contract markets that Robinhood is actively working to partner with.  And, regardless, Defendants' refusal to disavow any future enforcement action against Robinhood only confirms that the threat of a future enforcement action is credible.

The case plainly satisfies the remaining elements of Article III standing. The risk of harm to Robinhood from future enforcement of Massachusetts' sports wagering laws can be traced to the existence and enforcement of those laws.  And because Robinhood seeks an injunction against such enforcement, a favorable judicial decision will likely redress its injury.

## STANDARD OF REVIEW

This Court reviews a "district court's grant of the motion to dismiss … de novo," including on ripeness grounds.  *Jensen*, 160 F.4th at 24.  To "determine jurisdiction," this Court may "consider materials outside the pleadings."  *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) (citation omitted).

# ARGUMENT

## I.  Robinhood's Claim Is Ripe

Article III limits the jurisdiction of federal courts to "Cases" and "Controversies."  U.S. Const. Art. III, § 2.  Ripeness "originate[s]" from that constitutional limitation.  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 & n.5 (2014); *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006).  The doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 33 (1st Cir. 1999) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).  While "standing is concerned with 'who' is bringing the challenge" and "ripeness is concerned with 'when' the challenge is brought," the doctrines "tend to overlap" in the pre-enforcement context.  *N.H. Lottery*, 986 F.3d at 52.

In evaluating whether a claim is ripe, courts "consider '(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.'"  *Algonquin Gas Transmission, LLC v. Weymouth*, 919 F.3d 54, 62 (1st Cir. 2019) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)).  Although "[b]oth prongs of the test ordinarily

25

must be satisfied, … a very strong showing on one axis may compensate for a relatively weak showing on the other." *Stern v. U.S. Dist. Ct. for the Dist. of Mass.*, 214 F.3d 4, 10 (1st Cir. 2000). While "[t]he fitness prong of this inquiry implicates both constitutional and prudential justiciability concerns," "the hardship prong … is purely prudential."[8] *Algonquin Gas Transmission*, 919 F.3d at 62. Robinhood's claim meets both the fitness and hardship prongs of the ripeness analysis, and the district court erred in concluding otherwise.

## A. Robinhood's Claim Is Fit for Adjudication

The fitness prong "implicates both constitutional and prudential justiciability concerns," *Algonquin Gas Transmission*, 919 F.3d at 62, presenting "subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends on facts that may not yet be sufficiently developed," *Stern*, 214 F.3d at 10 (quoting *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir. 1995)). Both aspects of this analysis confirm that Robinhood's claim is fit for review.

---

[8] Although the Supreme Court has cast doubt on the prudential components of ripeness, *see Susan B. Anthony List*, 573 U.S. at 167, this Court need not take up that question because Robinhood's claim satisfies both prongs, *see N.H. Lottery*, 986 F.3d at 52 n.8.

26

### 1.     *Robinhood's claim is constitutionally fit*

The constitutional contours of the fitness prong are familiar, and concern "whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." *Jensen*, 160 F.4th at 24 (quoting *Algonquin Gas Transmission*, 919 F.3d at 62). In the "pre-enforcement context, a party must have concrete plans to engage immediately (or nearly so) in an arguably proscribed activity." *Whitehouse*, 199 F.3d at 33.

Robinhood not only has "concrete plans" to engage in event-contract trading but began engaging in that conduct more than a year ago when it launched a platform offering its customers access to sports-related event contracts through KalshiEX. JA77. Less than six months later, the Massachusetts Attorney General sued KalshiEX for offering those same contracts. *See* JA103-04; *supra* pp. 13-14. And the Commonwealth has repeatedly taken the position—including in its enforcement action against KalshiEX—that Massachusetts gaming law proscribes that conduct and that the Commodity Exchange Act does not preempt Massachusetts law. *See, e.g.*, JA141-42; Dist. Ct. Dkt. 102 at 10. That suffices to render Robinhood's claim constitutionally fit for adjudication.

27

There is nothing uncertain about the threat of an enforcement action against Robinhood. The Massachusetts Attorney General's complaint against KalshiEX emphasized that KalshiEX's contracts "are also available on Robinhood," "[t]he two platforms have partnered since March of 2025 to offer Kalshi wagers," and "[a]pproximately $1 billion worth of Kalshi wagers were traded on Robinhood during the second quarter of" 2025. JA137. And Defendants have expressly reserved the right to pursue an enforcement action against Robinhood. *See* JA30-31; JA152-53.

Below, Defendants highlighted that Robinhood is an FCM while KalshiEX is a DCM, Dist. Ct. Dkt. 102 at 19, but this fact has nothing to do with the threat of enforcement. The Massachusetts statute underpinning the Commonwealth's enforcement action in *KalshiEX* makes no such distinction, broadly prohibiting entities from "engag[ing] in *any* activity in connection with sports wagering in the commonwealth unless all required licenses have been obtained." Mass. Gen. Laws ch. 23N, § 5(a) (emphasis added); *see* JA141-42. The Commission made no differentiation between DCMs and FCMs in advising licensees of the prohibition on offering sports-related event contracts, *see* JA67, or seeking information about vendors' relationships with entities offering such contracts, *see* JA160.

The likelihood of an enforcement action against Robinhood is far greater than in other cases that this Court previously found to be ripe. Consider *Rhode Island Association of Realtors, Inc. v. Whitehouse*, where a state statute imposed civil, and potentially criminal, liability for the use of public records in connection with solicitations. 199 F.3d at 28. A trade association, which sought to use those records to recruit new members, sued for injunctive and declaratory relief. *Id.* at 29. This Court explained that "*reasonableness* of the fear of enforcement is at the core of … ripeness." *Id.* at 33 (emphasis added). Even though "no person ha[d] ever been charged criminally under" the at-issue statute, the Attorney General "ha[d] never disclaimed it" and a related provision required the Attorney General "to investigate and, when appropriate, to prosecute violations." *Id.* at 28. Based on these facts, this Court determined the trade association "reasonably feared prosecution," making its claim fit for judicial review. *Id.* at 34; *see also N.H. Lottery*, 986 F.3d at 51 (explaining in the interrelated analysis of standing that "the lack of current prosecutions … is not dispositive").

Robinhood has an even stronger claim than in *Whitehouse* because the Commonwealth already has sought to enforce Massachusetts law against

29

KalshiEX for engaging in the same behavior as Robinhood, and named Robinhood in its *KalshiEX* complaint. It is eminently reasonable for Robinhood to fear that it would be subject to a similar enforcement action. "Ripeness does not require that [Robinhood] wait" for an enforcement action before filing suit. *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003).

This case is readily distinguishable from *Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017), which Defendants invoked and the district court cited below, *see* Add.2-3; Dist. Ct. Dkt. 81 at 11; Dist. Ct. Dkt. 102 at 20. *Reddy* involved a pre-enforcement challenge to a state statute allowing, but not requiring, a reproductive health care facility to demarcate a zone in which members of the public could not knowingly enter or remain. 845 F.3d at 495-96. Plaintiffs, who "regularly engage[d] in peaceful prayer, leafleting, sidewalk counseling, [and] pro-life advocacy" outside of New Hampshire reproductive health care facilities, "fear[ed] prosecution" if they continued to do so. *Id.* at 499 (citation omitted). This Court found the dispute was unripe because no facility had yet demarcated a zone and "the possible establishment and contours of such a future zone are highly uncertain." *Id.* at 505.

No such uncertainty exists here, as the Commonwealth emphatically claims that Massachusetts law forbids the conduct that Robinhood is engaging

in and wants to further engage in. *See also Mangual*, 317 F.3d at 60 (finding a claim ripe because plaintiff "averred an intention to continue his work as an investigative journalist" and "recent prosecutions … indicate a real threat of prosecution for his work").

### 2.    *Robinhood's claim is prudentially fit*

The prudential dimension of the fitness prong focuses on "whether resolution of the case turns on 'legal issues not likely to be significantly affected by further factual development.'" *Algonquin Gas Transmission*, 919 F.3d at 62 (quoting *Ernst & Young*, 45 F.3d at 536). No further factual development is needed here.

Robinhood's preemption challenge under the Supremacy Clause "presents an issue that is 'purely legal, and will not be clarified by further factual development.'" *Susan B. Anthony List*, 573 U.S. at 167 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)). "The question of preemption is predominantly legal." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983). Accordingly, courts across the country have decided this very preemption question in the likelihood-of-success prong of the preliminary injunction inquiry without the need

31

for factual development. *See, e.g.*, *KalshiEX*, 172 F.4th at 228, 231 n.6; *supra* pp. 8-9 & nn. 2-3.

Robinhood began offering sports-related event contracts in March 2025. *See* JA77. Whether Robinhood intermediates those contracts on exchanges hosted by KalshiEX, Rothera, or any other DCM is not a factual development that will alter its preemption challenge.

The only relevant factual development would be Defendants' bringing an enforcement action against Robinhood. But such a development cannot be a requirement for a claim to be prudentially fit because the lack of an enforcement action is a feature of every pre-enforcement challenge. *See, e.g.*, *N.H. Lottery*, 986 F.3d at 52-54; *Mangual*, 317 F.3d at 59-60. Because no further factual development is needed, Robinhood's claim is prudentially fit for adjudication.

### B.    Robinhood's Claim Satisfies the Hardship Prong

The hardship prong can be demonstrated through "[a] showing that the challenged statute, fairly read, thwarts implementation of" a party's "concrete plans to engage immediately (or nearly so) in an arguably proscribed activity." *Whitehouse*, 199 F.3d at 33. Courts may consider "whether granting relief would serve a useful purpose, or, put another way, whether the sought-after

32

declaration would be of practical assistance in setting the underlying controversy to rest." *Jensen*, 160 F.4th at 25 (quoting *Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 693 (1st Cir. 1994)). Robinhood handily clears this hardship hurdle.

Robinhood not only has "plans to engage" in offering sports-related event contracts but began doing so over a year ago. *See* JA77. Robinhood is working to expand these operations, *see* JA162, and provide its over 41,000 customers in Massachusetts with the opportunity to open new sports-related event contract positions, *see* JA94-95. Delaying adjudication "would put [Robinhood] on the horns of a dilemma," forcing it to choose between offering sports-related event contracts in Massachusetts, and thereby risking an enforcement action, or ceasing those operations to the detriment of its customers and business. *Stern*, 214 F.3d at 11. This is to say nothing of the attendant hardship that Robinhood would endure if Defendants eventually launched an enforcement action, which could subject Robinhood to civil and/or criminal penalties, as well as associated reputational harm. These "concrete costs" would clearly satisfy the hardship prong. *Jensen*, 160 F.4th at 25.

33

This Court has made clear that parties in Robinhood's position "should not have to operate under a dangling sword of indictment," waiting for Defendants to mount an enforcement action. *N.H. Lottery*, 986 F.3d at 53. "To require the industry to proceed without knowing whether the" state law covers a party's conduct "would impose a palpable and considerable hardship." *Thomas*, 473 U.S. at 581 (quoting *Pac. Gas & Elec.*, 461 U.S. at 201-02).

## C.    Defendants' Stipulations Do Not Render Robinhood's Claim Unripe

The district court's contrary conclusion on ripeness rested entirely on Defendants' stipulations not to commence an enforcement action pending the resolution of their preliminary-injunction motion in the *KalshiEX* state-court action. Add.4-5. That was error. Defendants cannot stipulate their way out of Robinhood's ripe claim in this fashion.

1.    Voluntary forbearance pending the outcome of a state-court action involving different parties cannot alter a claim's ripeness. This Court's decision in *New Hampshire Lottery Commission* is illustrative. The case involved a state lottery's challenge to the Department of Justice's (DOJ's) reinterpretation of the Wire Act in a manner that could impose liability for online state lottery sales. 986 F.3d at 46-47. "As an exercise of discretion," DOJ issued a

34

memorandum providing a 90-day stay of prosecutions to give entities that relied on the previous interpretation "time to bring their operations into compliance with federal law." *Id.* at 47 (citation omitted). DOJ emphasized that this was "not a safe harbor for violations of the Wire Act" but rather "an internal exercise of prosecutorial discretion." *Id.* (citation omitted).

After a state lottery and its commercial partner filed suit, DOJ clarified that it had not yet interpreted whether the Wire Act applied to state lotteries and issued "a separate ninety-day forbearance period specific to state lotteries and their vendors," to begin once "DOJ publicly announces its position on the applicability of the Wire Act to them." *Id.* DOJ then invoked its own "temporary discretionary forbearance" to argue that the plaintiffs' challenge was unripe. *Id.* at 53. This Court rejected that argument, finding that DOJ's reinterpretation created a "substantial controversy" over the Wire Act's application "of sufficient immediacy and reality" so as "to warrant the issuance of the judicial relief sought." *Id.* at 53 (quoting *Reddy*, 845 F.3d at 500).

Importantly, the Court distinguished DOJ's temporary forbearance, which does not affect ripeness, from an "unambiguous disclaimer of coverage," which the Court explained "can undermine standing in pre-enforcement cases." *Id.* at 52 (quoting *N.H. Hemp Council, Inc. v. Marshall*, 203 F.3d 1, 5

35

(1st Cir. 2000)); *see, e.g.*, *Reddy*, 845 F.3d at 502 ("[T]he government has affirmatively disavowed prosecution under the Act unless and until a zone is demarcated according to the Act's terms."); *Blum v. Holder*, 744 F.3d 790, 798 (1st Cir. 2014) ("The Government has affirmatively represented that it does not intend to prosecute such conduct because it does not think it is prohibited by the statute.").

In the analogous standing context, when "the only thing standing in the way of a criminal prosecution is the State's litigation position that it will voluntarily refrain from enforcing the statute according to its plain language," a controversy is justiciable. *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 711 (4th Cir. 1999); *see Whitehouse*, 199 F.3d at 36 (agreeing with same). Indeed, this Court found "state officials' nonbinding representations to adopt one of multiple interpretations" insufficient to defeat standing in part because they did "not promise *nonenforcement*." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 50-51 (1st Cir. 2024) (citation omitted). Those analyses carry weight here, "[i]n the pre-enforcement context," where "the doctrines of standing and ripeness tend to overlap." *N.H. Lottery*, 986 F.3d at 52; *see Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 35 (1st Cir. 2020) ("The

36

constitutional standing and ripeness inquiries are interrelated and often duplicative").

Here, Defendants have not disclaimed a belief that Robinhood's conduct violates Massachusetts gaming law, nor have they represented that they do not intend to bring an action against Robinhood. To the contrary, Defendants expressly reserved the right to bring an enforcement action in their stipulations. *See* JA30-31; JA152-53. All that stands in the way of enforcement is Defendants' litigation position that they will *temporarily* refrain from enforcing Massachusetts' gaming laws against Robinhood, which is the very opposite of an "unambiguous disclaimer of coverage." *N.H. Lottery*, 986 F.3d at 52 (citation omitted). Defendants' stipulations therefore cannot impact the ripeness of Robinhood's claim.

2. The district court reasoned that Defendants' stipulations rendered "the threat of enforcement" against Robinhood and Robinhood's hardship "contingent" on the *KalshiEX* state-court proceeding. Add.4-5; *see also* Add.6 (incorporating reasoning from prior order). The threat to Robinhood, according to the district court, "depends entirely on what th[e] decision" in *KalshiEX* "proves to be." Add.4. That reasoning lacks merit. No matter

37

the outcome in *KalshiEX*, the concrete threat of enforcement, coupled with Robinhood's hardship, render its claim ripe.

Start with an outcome adverse to KalshiEX in state court. Since Robinhood is not a party to *KalshiEX*, it cannot be bound by the outcome. *See Taylor v. Sturgell*, 553 U.S. 880, 898 (2008) ("[O]ur decisions emphasize the fundamental nature of the general rule that a litigant is not bound by a judgment to which she was not a party."). Thus, even if the Massachusetts courts reject KalshiEX's preemption argument, that ruling will not bind Robinhood or a federal court.

To be sure, as the district court noted, if the Commonwealth enjoined "Kalshi from conducting gaming-related business in the Commonwealth," Robinhood could not use KalshiEX as its DCM. Add.4. But Robinhood is not restricted to offering sports-related event contracts on KalshiEX's DCM. Robinhood has been "working to be able to offer sports-related event contracts on one or more additional DCMs." JA162. Robinhood even has planned a June 2026 launch of event contract trading on an affiliated DCM, Rothera. *See supra* pp. 12-13. This "concrete plan[] to engage immediately (or nearly so) in an arguably proscribed activity" satisfies the constitutional ripeness inquiry. *Whitehouse*, 199 F.3d at 33.

38

Notably, Defendants' stipulations promising to temporarily refrain from enforcement applied only to "Robinhood's facilitation of Massachusetts customers' orders in sports-related events contracts listed and executed on" the DCMs of either KalshiEX or ForecastEx. JA152. The district court failed to acknowledge that Robinhood's plans to expand its offerings on other DCMs (including Rothera) take its conduct outside the ambit of Defendants' stipulations. Nor can Defendants remedy these deficient stipulations by amending them to cover additional DCMs because temporary forbearance does not impact the ripeness of Robinhood's claim. *See supra* pp. 34-37.

Now consider the second potential outcome: a victory for KalshiEX in state court. The district court believed that Robinhood's claim and hardship are "contingent" on the KalshiEX action because if KalshiEX *succeeds* in Massachusetts state court, "it is unlikely that Robinhood – which currently offers sports-related event contracts exclusively through Kalshi – would face any imminent risk of enforcement." Add.4. But a ruling on KalshiEX's motion for a *preliminary* injunction will not finally resolve the underlying merits, leaving Defendants free to pursue a parallel enforcement action against Robinhood. And, of course, the mere fact that a state-court proceeding could resolve the question presented before the federal court does not mean the federal court

39

lacks jurisdiction: "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). As just discussed, moreover, Robinhood will imminently begin offering sports-related event contracts through *another* DCM, and is entitled to litigate the lawfulness of that conduct now.

3.    The district court's contrary ruling essentially abstains from deciding a federal question in deference to the Massachusetts state-court *KalshiEX* proceedings. The court's analysis, if accepted, would erode the guardrails that circumscribe federal courts' ability to abstain from exercising their jurisdiction when similar litigation is pending in state court.

Federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them." *Colo. River Water Conservation Dist.*, 424 U.S. at 817. They cannot simply defer to a state-court proceeding and call a plaintiff's claim unripe because the state-court proceeding will decide the legal issue.

To be sure, "circumscribed doctrines" exist "that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Exxon Mobil*, 544 U.S. at 284; *see Maldonado-Cabrera v. Anglero-Alfaro*, 26 F.4th 523, 527

40

(1st Cir. 2022) (absent a showing of "exceptional circumstances," "a federal court is not free to surrender jurisdiction—whether by outright dismissal or by a stay—to a parallel state-court action").  But federal law permits discretionary abstention only in limited circumstances—none of which the district court even analyzed.  And no recognized abstention doctrine allows a federal court to abstain from deciding a federal question in deference to a state court's adjudication of that same question in a case involving a different party.  *Cf. Verizon N. Eng. v. R.I. Dep't of Lab. & Training*, 723 F.3d 113, 116 (1st Cir. 2013) (federal court may abstain under *Younger* doctrine where, *inter alia*, the state-court proceeding provides "an adequate opportunity for *the federal plaintiff* to advance his federal constitutional challenge" (emphasis added)).

Notably, Defendants' explanation for their stipulations—that "this sequencing promotes judicial economy," JA30; JA152—sounds squarely in abstention-type considerations.  Yet "something more than a concern for judicial efficiency must animate a federal court's decision to give up jurisdiction." *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 16 (1st Cir. 1990).  Robinhood need not wait for a state court to decide this preemption question just because Defendants believe it is more efficient to litigate in that forum before dealing with Robinhood's claim in federal court.  Robinhood has

41

an interest in resolving this quintessential federal question in federal court, where appellate review would promote judicial economy by resolving the question across multiple states.

4.    The district court's approach would invite defendants to forum-shop by stipulating their way out of plaintiffs' chosen federal forums. As plaintiff, Robinhood "is 'the master of the complaint' and therefore controls much about [this] suit," *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987)), including "what law [it] will rely upon," *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913). Robinhood made its choice, invoking federal jurisdiction by filing a claim arising under federal law in federal court.

The district court's approach unfairly allows Defendants' stipulations to upset that choice. It cannot be that easy for State Defendants to avoid a federal-court lawsuit seeking to litigate a question of federal law. Neither Defendants nor the district court below cited any case endorsing that approach.

*      *      *

42

In sum, Robinhood's claim is a prototypical pre-enforcement challenge that satisfies both the fitness and hardship prongs of the ripeness analysis. The district court erred in dismissing Robinhood's complaint as unripe.

## II.    Robinhood Has Article III Standing

Below, Defendants also claimed that Robinhood lacked Article III standing. *See* Dist. Ct. Dkt. 102 at 14-18. While the district court did not reach the issue, *see* Add.1-6, Robinhood addresses it here in light of this Court's "independent obligation to assure that standing exists," *R&D Master Enters., Inc. v. Fin. Oversight & Mgmt. Bd. for P.R.*, 75 F.4th 41, 46 n.4 (1st Cir. 2023) (citation omitted); *see, e.g.*, *Jensen*, 160 F.4th at 25-26 ("rejecting defendants' lack of standing arguments" even though "the district court did not reach the issue").

There are "three elements" to the "irreducible constitutional minimum of standing." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted) (cleaned up). A "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*; *see Jensen*, 160 F.4th at 26 (similar). For many of the same "reasons … why this case is ripe," *Jensen*, 160 F.4th at 27, all three elements are satisfied here. *See N.H. Lottery*, 986

43

F.3d at 52 (noting the doctrines of "ripeness" and "standing" "tend to overlap" in the pre-enforcement context).

1.      Start with Robinhood's injury-in-fact.  In pre-enforcement challenges like this one, injury-in-fact is established when there is a "substantial risk" of future "harm" from enforcement.  *Susan B. Anthony List*, 573 U.S. at 158 (citation omitted).  All signs point toward a "substantial risk" here.

To begin, Robinhood has identified the "specific" conduct "that could be the target of future enforcement," *O'Neil v. Canton Police Dep't*, 116 F.4th 25, 31 n.9 (1st Cir. 2024), namely, "offering sports-related event contracts trading," JA83.  Because the "parameters" of the conduct at issue are "discrete and well-defined," "[t]his is no hypothetical case." *Whitehouse*, 199 F.3d at 32; *see Stern*, 214 F.3d at 11.

Robinhood also has taken "significant … step[s] along a path" that Massachusetts claims is "blocked by … statutory prescription." *Whitehouse*, 199 F.3d at 32.  As discussed, *supra* pp. 27-28, Robinhood already has "facilitated … sports-related event contract trades" that Massachusetts believes are "contrary to" its laws. JA72; JA77.  And Robinhood's parent company has "formed a joint venture" to acquire Rothera, a DCM that will conduct trading of such

44

contracts. JA162. These "step[s]" confirm that Robinhood's "interest" in offering sports-related event contracts is "manifest" and thus that a "sufficiently imminent threat of injury loom[s]." *Whitehouse*, 199 F.3d at 32; *see N.H. Right to Life Pol. Action Comm. v. Gardner*, 99 F.3d 8, 14 (1st Cir. 1996) (similar).

There is also a "history of past enforcement against the same conduct," which further "supports a finding of injury in fact for pre-enforcement standing." *N.H. Lottery*, 986 F.3d at 50; *see Susan B. Anthony List*, 573 U.S. at 164 ("past enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical'" (citation omitted)). The Commonwealth has sued KalshiEX for offering sports-related event contracts, *see supra* pp. 13-14, and even noted in that enforcement action that KalshiEX had "partnered" with Robinhood "to offer … wagers" in violation of state law, JA137.

Below, Defendants suggested that there was no credible threat of enforcement against Robinhood because it is an FCM and not a DCM. Yet Defendants have "not articulated any reason why this is a distinction that makes a difference." *N.H. Lottery*, 986 F.3d at 50-51. Massachusetts laws bar entities from "engag[ing] in *any* activity in connection with sports wagering" "unless all required licenses have been obtained." Mass. Gen. Laws ch. 23N,

45

§ 5(a) (emphasis added).  That is presumably why Defendants have made no distinction between merchants and markets when warning against offering sports-related event contracts or seeking information regarding entities that offer or facilitate the trading of such contracts.  *Supra* pp. 18-20.  And Defendants have certainly not disavowed enforcing the Commonwealth's sports wagering laws against FCMs like Robinhood.  *Supra* pp. 34-37.

Defendants also suggested that their stipulation has narrowed any near-term enforcement risk to Robinhood.  But the Commonwealth has *not* "affirmatively disavowed" enforcing its sports wagering laws against Robinhood.  *Reddy*, 845 F.3d at 502.  The stipulation does not eliminate *any* enforcement risk as to the "additional DCMs" that Robinhood is actively seeking to partner with, including Rothera.  JA162; *see supra* pp. 38-39.  And even as to the "sports-related event contracts" covered by the stipulation, Defendants have expressly reserved the right to initiate an "enforcement action against Robinhood based on" its "facilitation" and "offering" of such contracts after the appeal of the preliminary injunction in *KalshiEX* comes to a close.  JA152.  A defendant's "refus[al] to disavow" a future enforcement action against a plaintiff who brings a pre-enforcement challenge provides further confirmation

46

"that the threat of future prosecution" is "credible." *N.H. Right to Life Pol. Action Comm.*, 99 F.3d at 17.

2.      Finally, the substantial risk of harm to Robinhood from future enforcement of the Commonwealth's sports wagering laws is obviously "trace[able] to the existence and threatened enforcement of" those laws. *Id.* at 13 (stressing that "the proper defendants" in such an action "are the government officials charged with administering and enforcing" those laws). And because Robinhood seeks an injunction against "enforcing" these laws, JA98, its "injury … is likely to be redressed by a favorable judicial decision," *Spokeo*, 578 U.S. at 338; *see Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) ("If a defendant's action causes an injury, enjoining the action … will typically redress that injury.").

In short, Robinhood has Article III standing "for the same reasons" that this case is ripe. *Jensen*, 160 F.4th at 26. Accordingly, should this Court "reach the issue," it should "reject" Defendants' "argument that [Robinhood] lacks standing." *Id.*

47

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's order dismissing this action.

Respectfully submitted,

*/s/ Lisa S. Blatt*

NICHOLAS J. SCHNEIDER
CRAIG R. WAKSLER
ECKERT SEAMANS CHERIN & MEL-
LOTT LLC
 *2 International Plaza, 16th Fl.*
 *Boston, MA 02110*

LISA S. BLATT
AMY MASON SAHARIA
NOAH C. MCCULLOUGH
KATHARINE E.W. PINCUS
WILLIAMS & CONNOLLY, LLP
 *680 Maine Avenue, S.W.*
 *Washington, DC 20024*
 *(202) 434-5000*
 *lblatt@wc.com*

*Counsel for Plaintiff-Appellant*
*Robinhood Derivatives, LLC*

May 26, 2026

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Lisa S. Blatt, counsel for plaintiff-appellant Robinhood Derivatives,

LLC, and a member of the Bar of this Court, certify, pursuant to Federal Rule

of Appellate Procedure 32(g), that the attached Brief of Plaintiff-Appellant

Robinhood Derivatives, LLC is proportionately spaced, has a typeface of 14

points, and contains 9,252 words.

/s/ *Lisa S. Blatt*
LISA S. BLATT

May 26, 2026

## CERTIFICATE OF SERVICE

I, Lisa S. Blatt, counsel for plaintiff-appellant Robinhood Derivatives, LLC, certify that, on May 26, 2026, a copy of the attached Brief of Plaintiff-Appellant Robinhood Derivatives, LLC, was filed with the Clerk and served on the parties through the Court's electronic filing system. I further certify that all parties required to be served have been served.

/s/ *Lisa S. Blatt*
LISA S. BLATT

**ADDENDUM**

# TABLE OF CONTENTS

Page

Order Granting Motion to Dismiss (Nov. 13, 2025), Dkt. 69............................Add.1

Electronic Order Denying Motion for Preliminary Injunction and Granting
    Motion to Dismiss (Mar. 13, 2026), Dkt. 108.................................................Add.6

Order of Dismissal (Mar. 13, 2026), Dkt. 109....................................................Add.7

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-12578-RGS

ROBINHOOD DERIVATIVES, LLC

v.

ANDREA JOY CAMPBELL, in her official capacity as
Attorney General of the Commonwealth of Massachusetts;
JORDAN MAYNARD, in his official capacity as
Chair of the Massachusetts Gaming Commission;
EILEEN O'BRIEN, in her official capacity as
Commissioner of the Massachusetts Gaming Commission;
BRADFORD R. HILL, in his official capacity as
Commissioner of the Massachusetts Gaming Commission;
NAKISHA SKINNER, in her official capacity as
Commissioner of the Massachusetts Gaming Commission; and
PAUL BRODEUR, in his official capacity as
Commissioner of the Massachusetts Gaming Commission

ORDER ON PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION AND
DEFENDANTS' MOTION TO DISMISS

November 13, 2025

STEARNS, D.J.

Plaintiff Robinhood Derivatives, LLC (Robinhood) filed this action against defendants Andrea Joy Campbell, in her official capacity as Attorney General of the Commonwealth of Massachusetts; Jordan Maynard, in his official capacity as Chair of the Massachusetts Gaming Commission; Eileen O'Brien in her official capacity as Commissioner of the Massachusetts

Add.1

Gaming Commission; Bradford R. Hill, in his official capacity as Commissioner of the Massachusetts Gaming Commission; Nakisha Skinner, in her official capacity as Commissioner of the Massachusetts Gaming Commission; and Paul Brodeur, in his official capacity as Commissioner of the Massachusetts Gaming Commission (collectively, the Commonwealth), seeking to enjoin enforcement of state gambling laws which Robinhood alleges are preempted by the Commodity Exchange Act. Robinhood moves for a preliminary injunction barring the Attorney General from enforcing state gaming laws against its sports-event related contracts. The Commonwealth cross-moves to dismiss the case. For the following reasons, the court will allow the Commonwealth's motion and deny Robinhood's motion as moot.

## DISCUSSION

The court begins (and ends) its analysis with the issue of ripeness.[1] Federal district courts are not courts of general jurisdiction. They are constrained by Article III, which, among other things, imposes a case or controversy requirement. The ripeness doctrine has its roots in this requirement. *See Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017). It

---

[1] The Commonwealth alternatively moves to dismiss or stay under various abstention doctrines. Given the court's determination that the case is not ripe for a decision, it need not address these arguments.

2

Add.2

"seeks to prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.*, quoting *Texas v. United States*, 523 U.S. 296, 300 (1998).

A claim is ripe if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant" judgment. *Lab. Rels. Div. of Constr. Indus. of Massachusetts, Inc. v. Healey*, 844 F.3d 318, 326 (1st Cir. 2016), quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). There are two components to this analysis. First, the claim must be "fit for judicial decision at the time the suit is filed," *Lab. Rels. Div.*, 844 F.3d at 326, that is, there must be "a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal courts," *Reddy*, 845 F.3d at 501, quoting *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013). Second, there must be some risk of "hardship if 'court consideration' is withheld." *Lab. Rels. Div.*, 844 F.3d at 326, quoting *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003). Robinhood, as the party asserting jurisdiction, bears the burden of alleging sufficient facts to satisfy each prong. *Reddy*, 845 F.3d at 501.

3

Add.3

Robinhood has not shown that its sole federal claim (under *Ex Parte Young*) is ripe for judicial review.  The Commonwealth has stipulated that it will not file any enforcement action against Robinhood while its motion for a preliminary injunction remains pending in the proceeding brought against Kalshi in the Massachusetts courts.  There thus is no risk that the Commonwealth will engage in the conduct which Robinhood alleges to be unlawful prior to a decision being issued by a state court of competent jurisdiction.  Whether there is a risk that the Commonwealth will engage in that conduct *after* the state court rules on the motion depends entirely on what that decision proves to be.  If the state court denies the Commonwealth's motion as unlikely to succeed on the merits, for example, it is unlikely that Robinhood – which currently offers sports-related event contracts exclusively through Kalshi – would face any imminent risk of enforcement.  If the state court instead allows the Commonwealth's motion and enjoins Kalshi from conducting gaming-related business in the Commonwealth, Robinhood would lose its existing Massachusetts sports event platform.  An inability to prospectively engage in the type of conduct that allegedly puts Robinhood at risk of enforcement would render its *Ex Parte Young* claim a nullity.

4

Add.4

Robinhood has similarly not shown that it will suffer any hardship if adjudication of its claim is delayed until it ripens. The hardship prong "focuses on 'direct and immediate' harm. It is unconcerned with wholly contingent harm." *Lab. Rels. Div.*, 844 F.3d at 330, quoting *McInnis-Misenor*, 319 F.3d at 73. Here, because the threat of enforcement is (for the reasons discussed above) contingent, any hardship is also necessarily contingent. *See Lab. Rels. Div.*, 844 F.3d at 330 (finding a determination under the first prong that a claim is contingent on future events to "also dictat[e] the outcome as to the second prong" because "the harm to the [plaintiffs] from any delay in having their case adjudicated is necessarily also contingent").

### ORDER

For the foregoing reasons, defendants' motion to dismiss is <u>ALLOWED</u> and plaintiff's motion for a preliminary injunction is <u>DENIED AS MOOT</u>. The case is dismissed without prejudice for lack of ripeness.

SO ORDERED.

/s/ Richard G. Stearns_____
UNITED STATES DISTRICT JUDGE

Add.5

# *Robinhood Derivatives, LLC v. Campbell et al*

**Massachusetts District Court**

Case no. 1:25-cv-12578-RGS (D. Mass.)
Filed date: March 13, 2026
Docket entry no.: 108

Docket text:

> Judge Richard G. Stearns: ELECTRONIC ORDER entered denying 89 Motion for Preliminary Injunction; granting 101 Motion to Dismiss.The court only reopened this matter because Robinhood began offering sports-related event contracts through ForecastEx. Robinhood now represents that it has stopped offering sports-related event contracts through ForecastEx. The case is accordingly dismissed for the same reasons previously discussed in 69 Order. (RGS, law3) (Entered: 03/13/2026)

This PDF was generated on March 13, 2026 by PacerPro for a text-only docket entry.

https://app.pacerpro.com/cases/1081161575

Add.6

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**<u>Robinhood Derivatives, LLC</u>**
     Plaintiff

     V.

**<u>Campbell et al</u>**
     Defendants

CIVIL ACTION

NO. **1:25-cv-12578-RGS**

## <u>ORDER OF DISMISSAL</u>

<u>Stearns, D. J.</u>

In accordance with the Court's Order entered March 13, 2026 [Doc. No. 108] it is hereby <u>ORDERED</u> that the above-entitled action be and hereby is <u>DISMISSED.</u>

By the Court,

3/13/2026
     Date

/s/ Jacqueline Martin
Deputy Clerk

Add.7