No. 26-1257

# In the United States Court of Appeals for the First Circuit

ROBINHOOD DERIVATIVES, LLC,
*Plaintiff-Appellant,*

*v.*

ANDREA JOY CAMPBELL, in the official capacity as Attorney General of the Commonwealth of Massachusetts; JORDAN MAYNARD, in the official capacity as Chair of the Massachusetts Gaming Commission; EILEEN O'BRIEN, in the official capacity as Commissioner of the Massachusetts Gaming Commission; BRADFORD R. HILL, in the official capacity as Commissioner of the Massachusetts Gaming Commission; NAKISHA SKINNER, in the official capacity as Commissioner of the Massachusetts Gaming Commission; PAUL BRODEUR, in the official capacity as Commissioner of the Massachusetts Gaming Commission,
*Defendants-Appellees.*

*On appeal from the United States District Court for the District of Massachusetts, No. 1:25-cv-12578, Hon. Richard G. Stearns*

## REPLY BRIEF OF PLAINTIFF-APPELLANT ROBINHOOD DERIVATIVES, LLC

NICHOLAS J. SCHNEIDER
CRAIG R. WAKSLER
ECKERT SEAMANS CHERIN & MELLOTT LLC
*2 International Plaza, 16th Fl.*
*Boston, MA 02110*

LISA S. BLATT
AMY MASON SAHARIA
NOAH C. MCCULLOUGH
KATHARINE E.W. PINCUS
WILLIAMS & CONNOLLY, LLP
*680 Maine Avenue, S.W.*
*Washington, DC 20024*
*(202) 434-5000*
*lblatt@wc.com*

# TABLE OF CONTENTS

Page

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. Robinhood's Claim Is Ripe ........ 3

A. Robinhood's Claim Is Fit for Adjudication ........ 4

B. Robinhood Satisfies the Hardship Prong ........ 16

C. Robinhood's Plans To Offer Event Contracts Through Rothera Independently Render Its Claim Ripe ........ 18

II. Robinhood Has Properly Alleged Its *Ex Parte Young* Claim ........ 25

CONCLUSION ........ 30

**TABLE OF AUTHORITIES**

Page

**CASES**

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) .......... 26
*Aroostook Band of Micmacs v. Ryan*, 404 F.3d 48 (1st Cir. 2005), *abrogated on other grounds by Narragansett Indian Tribe v. Rhode Island*, 449 F.3d 16 (1st Cir. 2006) .......... 27
*Child.'s Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412 (6th Cir. 1996) .......... 28, 29
*Cotto v. Campbell*, 126 F.4th 761 (1st Cir. 2025), *cert. denied*, 146 S. Ct. 1491 (2026) .......... 26, 27
*Delgado-Caraballo v. Hosp. Pavía Hato Rey, Inc.*, 889 F.3d 30 (1st Cir. 2018) .......... 25
*Edelman v. Jordan*, 415 U.S. 651 (1974) .......... 26
*Ex parte Young*, 209 U.S. 123 (1908) .......... *passim*
*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) .......... 13
*In re Fin. Oversight & Mgmt. Bd. for P.R.*, 953 F.3d 154 (1st Cir. 2020) .......... 24
*Jensen v. R.I. Cannabis Control Comm'n*, 160 F.4th 18 (1st Cir. 2025) .......... 20
*King v. Youngkin*, 122 F.4th 539 (4th Cir. 2024) .......... 29
*Lab. Rels. Div. of Constr. Indus. of Mass., Inc. v. Healey*, 844 F.3d 318 (1st Cir. 2016) .......... 17, 18
*Mangual v. Rotger-Sabat*, 317 F.3d 45 (1st Cir. 2003) .......... *passim*
*McNeese v. Bd. of Educ.*, 373 U.S. 668 (1963) .......... 15
*Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024) .......... 28
*Minn. RFL Republican Farmer Lab. Caucus v. Freeman*, 33 F.4th 985 (8th Cir. 2022) .......... 28
*N.H. Hemp Council, Inc. v. Marshall*, 203 F.3d 1 (1st Cir. 2000) .......... 9
*N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38 (1st Cir. 2021) .......... *passim*
*N.H. Right to Life Pol. Action Comm. v. Gardner*, 99 F.3d 8 (1st Cir. 1996) .......... 24, 25
*Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017) .......... 12
*R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26 (1st Cir. 1999) .......... *passim*
*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .......... 5, 6, 7

Page

Cases—cont'd:

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002) ........ 27
*Walden v. Kosinski*, 153 F.4th 118 (2d Cir. 2025) ........ 29
*Wilkins v. Genzyme Corp.*, 93 F.4th 33 (1st Cir. 2024) ........ 3, 25

## STATUTES

Mass. Gen. Laws ch. 23N, § 5 ........ 4
Mass. Gen. Laws ch. 23N, § 21 ........ 10

## OTHER AUTHORITIES

*Robinhood Reports Second Quarter 2026 Results*, Robinhood (July 29, 2026), https://investors.robinhood.com/static-files/2f42ce10-59b7-4880-8371-7d52ede7c22e ........ 20
*Robinhood Routes Prediction Market Trades Through Rothera Exchange*, SCCG Mgmt. (June 5, 2026), https://sccgmanagement.com/sccg-articles/2026/06/05/robinhood-routes-prediction-market-trades-through-its-own ........ 20

## INTRODUCTION

Defendants do not dispute the core facts that render Robinhood's preemption challenge to Massachusetts' sports-wagering laws ripe: for more than a year, Robinhood has engaged in activity that Defendants claim is proscribed by these laws. And Defendants are actively enforcing that law against KalshiEX, LLC, a federally designated contract market ("DCM") with which Robinhood partners. Defendants have not disavowed their intent to enforce the Commonwealth's laws against Robinhood, forcing Robinhood to choose between abandoning its lawful, federally regulated business or continuing to operate under the threat of an enforcement action that would carry significant civil and even criminal penalties. On these facts, this dispute is plainly justiciable, and the district court had no authority to decline to exercise jurisdiction.

This Court's precedent forecloses Defendants' reliance on their stipulations of *temporary* forbearance. A promise merely to defer the date when the sword of Damocles will fall does not remove the threat of enforcement. If anything, it exposes Robinhood to even greater liability as it continues to engage in activity that Defendants believe violates state law. Nor

does Defendants' professed uncertainty about whether they will commence an enforcement action after their stipulations expire defeat ripeness.

In any event, Robinhood's plans (now realized) to offer its customers the opportunity to trade sports-related event contracts on other DCMs, including Rothera Exchange and Clearing LLC, provide an independent basis for ripeness that is unaffected by Defendants' stipulations. Defendants suggest that the district court's failure to grapple with this point is no matter, because Robinhood's allegations and evidence about its plans for Rothera are too hypothetical to demonstrate ripeness. But an allegation of intent to engage in arguably prohibited conduct suffices; Robinhood offered much more by averring in a declaration to specific facts regarding its parent company's interest in Rothera and Robinhood's concrete plans to offer trades on Rothera by June 2026.

Defendants (at 30-31) argue that the Rothera developments at most warrant a remand for reconsideration in light of changed circumstances. A remand for further consideration might be appropriate had Robinhood first disclosed its plans to offer trades on Rothera *after* the district court's judgment. But here Robinhood prominently disclosed those plans in opposition to Defendants' motion to dismiss in the proceedings below. The

district court simply erred in overlooking them; that error requires reversal, not remand.

Finally, Defendants alternatively urge the Court to affirm on the merits, but their failure to cross-appeal forecloses this argument. *See, e.g.*, *Wilkins v. Genzyme Corp.*, 93 F.4th 33, 43 (1st Cir. 2024). In any event, to state a claim under *Ex parte Young*, 209 U.S. 123 (1908), Robinhood need only allege an ongoing violation of federal law by a state official and seek relief properly characterized as prospective. Defendants do not dispute the second of these elements. And the first element—that Robinhood allege an ongoing violation of federal law—dovetails with ripeness and standing. If Robinhood's claim is ripe and it has standing, it has stated a claim under *Ex parte Young*.

## ARGUMENT

### I. Robinhood's Claim Is Ripe

Robinhood's claim satisfies both the fitness and hardship prongs of the ripeness test. Its claim is fit for adjudication because it *currently* engages in arguably proscribed activity by offering sports-related event contracts on DCMs, including Rothera. And Robinhood risks significant hardship, since it must choose between what it believes is federally lawful activity and the risk of civil and criminal liability. Neither Defendants' stipulations nor their

purported desire to base a subsequent enforcement decision on the outcome of the *KalshiEX* state-court litigation renders Robinhood's claim unripe.

### A. Robinhood's Claim Is Fit for Adjudication

1. In the "pre-enforcement context, a party must have concrete plans to engage immediately (or nearly so) in an arguably proscribed activity." *R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 33 (1st Cir. 1999). Robinhood easily clears this hurdle. Robinhood Br. 27-31. Robinhood currently offers its customers access to sports-related event contracts through KalshiEX. JA77. Defendants do not deny that their position is that Massachusetts law prohibits engaging in this activity without a Massachusetts license. *See* Mass. Gen. Laws ch. 23N, § 5(a). Nor could they, as the Commonwealth's *KalshiEX* complaint directly referred to Robinhood's offerings. JA137. While Defendants (at 18) dismiss the Commonwealth's complaint's discussion of Robinhood as a mere "passing reference," the fact remains that Defendants have pursued an enforcement action against KalshiEX for engaging in the same behavior as Robinhood and named Robinhood in their complaint. It is more than reasonable for Robinhood to fear that it would be subject to a similar enforcement action.

Evidence that Robinhood operates under threat of enforcement has only accumulated since the *KalshiEX* action began. *See* Robinhood Br. 18-20, 28 (describing relevant activities of Massachusetts Gaming Commission). Defendants (at 19) attempt to minimize the Commission's actions, asserting that they do not convey a threat of legal action against Robinhood. But the Commission has expressly reiterated its view that "wagering on sporting events may only be offered on authorized sports wagering platforms licensed by the Commission," JA67, and has contacted vendors of Robinhood's parent company asking them to disclose their relationships with entities offering event contracts, JA160. Those actions—like the enforcement action against KalshiEX—render Robinhood's fear of enforcement reasonable.

Courts have found evidence of past enforcement for similar conduct to constitute strong evidence of a threat of enforcement. *See* Robinhood Br. 29-30; *see, e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) ("[P]ast enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical.'" (citation omitted)); *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003) (recent prosecution of journalist for same activity as plaintiff, combined with plaintiff's intent to continue arguably proscribed activity, helped to establish ripeness).

Defendants (at 20) attempt to distinguish *Susan B. Anthony List* on the ground that the plaintiff there had been subject to an enforcement proceeding in the past, while Defendants have not yet brought proceedings against Robinhood. But *Susan B. Anthony List* does not suggest that past enforcement against a plaintiff is necessary to show a threat of future enforcement; rather, a history of past enforcement against the plaintiff is just one way to show "past enforcement against the same conduct" and thus that "the threat of enforcement is not 'chimerical.'" 573 U.S. at 164 (citation omitted).

In *Mangual*, this Court found ripeness where there was a history of past enforcement against *other* individuals engaged in the same conduct as the plaintiff even though the plaintiff had not yet been prosecuted. 317 F.3d at 60. Defendants (at 21) emphasize that a police officer had stated he was prepared to file criminal libel charges against the plaintiff, *see id.* at 54, but this Court did not rely on that fact in analyzing ripeness and instead emphasized "recent prosecutions under the criminal libel law" and plaintiff's "intention to continue his work as an investigative journalist," *id.* at 60.

As in *Mangual*, Robinhood intends to continue engaging in activity that Defendants indisputably claim violates state law. And Defendants cannot

dispute that the record contains a recent enforcement action (here against KalshiEX) based on "the same conduct," *Susan B. Anthony List*, 573 U.S. at 164; *see* JA101-43, "indicat[ing] a real threat of prosecution," *Mangual*, 317 F.3d at 60. "Ripeness does not require that [Robinhood] wait for such a prosecution." *Mangual*, 317 F.3d at 60.[1]

2. Defendants next argue (at 16-21, 24-25) that (1) their stipulations deferring enforcement mean that there is no present threat of enforcement against Robinhood and (2) even after their stipulations expire, it is uncertain whether they will commence enforcement. Those arguments do not defeat ripeness.

a. In their stipulations, Defendants promised only to refrain from initiating an enforcement action with respect to event contracts traded on KalshiEX and ForecastEx, LLC. Their stipulations do not apply with respect to event contracts traded on Rothera. *See infra* pp. 18-19. For that reason alone, the Court could and should reverse, but the Court should go further and

[1] Defendants also observe (at 21) that *Mangual* applied the "extremely low" standard applicable to First Amendment claims. But this Court has relied on cases involving First Amendment challenges when assessing the ripeness of non–First Amendment claims. *See, e.g.*, *N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 53 (1st Cir. 2021).

hold that Defendants' stipulations of temporary nonenforcement do not affect ripeness in order to prevent Defendants from attempting to stipulate their way out of this ripe claim yet again back in the district court.

Defendants cite no case holding that a promise to *temporarily* refrain from enforcing state law renders a claim challenging that state law unripe. To the contrary, this Court rejected that proposition in *New Hampshire Lottery Commission v. Rosen*, 986 F.3d 38 (1st Cir. 2021). *See* Robinhood Br. 34-37. In *New Hampshire Lottery*, the Department of Justice ("DOJ") issued a memorandum reinterpreting the Wire Act in a manner to extend to "bets and wagers" beyond sports gambling, but issued a 90-day stay of prosecution "[a]s an exercise of discretion." 986 F.3d at 44, 46 (citation omitted). The DOJ memorandum noted that "some reliance interests would be affected" by the reinterpretation and mentioned state lotteries as an example. *Id.* at 46.

The plaintiffs, a state lottery and one of its vendors, filed a pre-enforcement challenge. *Id.* at 44. DOJ then issued *another* memorandum stating that its earlier memorandum had not addressed whether the Wire Act applied to state lotteries and that DOJ was reviewing the question. *Id.* at 47. DOJ then announced another 90-day forbearance period specific to state lotteries, to begin when DOJ announced its position on the applicability of the

Wire Act to state lotteries. *Id.* Defendants here (at 24) oddly characterize these events as a "formal[]" declaration "that the plaintiff's conduct violated the Wire Act," but that characterization does not help them even if accurate, as Defendants likewise took the position that Robinhood's conduct violates Massachusetts law when they sued KalshiEX.

In finding the plaintiffs' claim ripe, this Court rejected DOJ's argument that its voluntary forbearance and purported uncertainty about the Wire Act's applicability to state lotteries rendered the plaintiffs' claim unfit. *See id.* at 52-53. The Court observed that an "'unambiguous disclaimer of coverage' … can undermine standing in pre-enforcement cases," but noted that DOJ had not disclaimed coverage. *Id.* at 52 (quoting *N.H. Hemp Council, Inc. v. Marshall*, 203 F.3d 1, 5 (1st Cir. 2000)). Because DOJ never "identif[ied] any alternative legal theory as to why [plaintiffs] might be exempt," the threat of enforcement remained credible despite the government's temporary forbearance and professed uncertainty about the law's application. *Id.* (citation omitted).

DOJ also pointed to the lack of any prosecutions against state lotteries in arguing against ripeness. But this Court rejected that argument as well, noting that "the plaintiffs here have been openly engaging in the conduct deemed criminal by [DOJ]." *Id.* at 51. In other words, the Court explained,

"[t]he plaintiffs here already have it all on the line, so to speak." *Id.* On those facts, DOJ's "prolonged coyness" about whether it would bring an action only "exacerbate[d] the threat." *Id.* at 52.

Robinhood faces the same risk as did the New Hampshire Lottery. As in that case, Defendants have not disclaimed *coverage*. To the contrary, Defendants steadfastly maintain that Massachusetts law bars Robinhood's desired activity. Nor have Defendants promised not to bring an enforcement action in the future. In the meantime, Robinhood is "openly engaging" in, and actively investing resources into, an activity that Defendants view as criminal. *Id.* at 51; *see* Mass. Gen. Laws ch. 23N, § 21(a). And Robinhood's potential civil liability grows each day. *See* Mass. Gen. Laws ch. 23N, § 21 (authorizing civil penalties "not to exceed $2,000 for each violation or $5,000 for violations arising from the same series of events"). Defendants' stipulations do not immunize Robinhood for its current activity; they only defer the date on which Defendants will "initiate" or "file" an enforcement action, leaving Robinhood at risk of future enforcement based on its current conduct while the stipulations are in effect. JA30, JA152. As in *New Hampshire Lottery*, Robinhood is entitled to an answer about whether its ongoing conduct is illegal now.

Nor can Defendants distinguish this Court's decision in *Whitehouse*. There, the attorney general stated in briefing that the plaintiff's conduct did "not appear to fall within the parameters of the" statutory prohibition at issue. 199 F.3d at 35 (citation omitted). This Court rejected that effort "to render a pre-enforcement challenge to an unambiguous state statute moot simply by declaring a case-specific amnesty," particularly since the attorney general never categorically disclaimed intent to enforce the statutory prohibition against any entity—and had in fact told at least one state agency the provision would be enforced. *Id.* at 35-36. Defendants' stipulations here fall even further short of a categorical disclaimer: as just explained, they have not granted Robinhood amnesty, they maintain that Massachusetts law applies to Robinhood's conduct, and they have taken and continue to take efforts to enforce the law against the same activity.

b. Defendants (at 16-18) also argue that, even after their stipulations expire, it is uncertain whether they will bring an enforcement action against Robinhood. But *certain* enforcement is not required. Ripeness requires only "a credible threat of prosecution," *N.H. Lottery*, 986 F.3d at 52 (citation omitted), and where a party is currently engaging in conduct a State views as

illegal and the State has brought an enforcement action against another party engaging in that activity, the threat of enforcement is certainly credible.

Defendants (at 19-20) invoke *Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017), but there the plaintiffs' claims were contingent on future action by third parties. In *Reddy*, state law permitted third-party reproductive healthcare facilities to establish buffer zones but did not require them to do so. *Id.* at 496. When plaintiffs brought a claim challenging the law, no buffer zone existed, none had ever existed, and third-party clinics submitted affidavits swearing that they had no intent to establish any buffer zone in the future. *Id.* at 502. Accordingly, unlike here, the plaintiffs were not currently engaged in activity that the defendants believed state law rendered illegal, and whether the plaintiffs would ever engage in such activity depended on the actions of third parties. Moreover, the government had "affirmatively disavowed prosecution under the Act unless and until" a buffer zone was created. *Id.*

This Court readily distinguished *Reddy* in *New Hampshire Lottery*, noting that in *Reddy*, "a third party demarcating a buffer zone" was "an unsatisfied precondition to enforcement." 986 F.3d at 51. By contrast, the Court concluded, DOJ's professed need to "mak[e] up its mind" about whether to prosecute state lotteries was no such "precondition" where DOJ offered no

argument as to why state lotteries would be lawful under DOJ's reading of the Wire Act. *Id.* at 51-53. So too here, Defendants' claim (at 17) that enforcement of state law against Robinhood "would require a further, independent exercise of prosecutorial discretion" does not defeat ripeness where their position that Robinhood's conduct is unlawful is well-settled. If it were otherwise, state defendants could always avoid pre-enforcement challenges by claiming not to have decided whether to exercise their prosecutorial discretion.

Defendants relatedly claim that whether they will enforce Massachusetts law against Robinhood "may" depend on the state-court ruling on the Commonwealth's preliminary-injunction motion in the *KalshiEX* proceedings. Defs.' Br. 16-17 (citation omitted). Yet Defendants cite no case holding a federal claim unripe merely because a parallel state-court case might resolve the at-issue legal question. To the contrary, the Supreme Court has rejected that general proposition. *See* Robinhood Br. 39-40 (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005)).

In any event, Robinhood remains at risk of enforcement no matter the outcome of the preliminary-injunction motion in the *KalshiEX* action. Defendants do not and cannot dispute that, if Defendants prevail on that motion in *KalshiEX*, they are free and indeed likely to pursue enforcement

against Robinhood in the future. Defendants instead suggest (at 17) that Robinhood will no longer have anything to fear because it will no longer be able to offer trades on KalshiEX. This suggestion is wrong for two reasons. First, it ignores Robinhood's plans to offer sports-related event contracts through other DCMs, including Rothera. *See infra* pp. 18-19. Second, it ignores that Defendants can still attempt to enforce the law against Robinhood by seeking penalties for *past* violations, since Defendants' stipulations do not grant Robinhood amnesty for ongoing trades on KalshiEX. *See supra* p. 10.

As for the second potential outcome, a ruling at the preliminary-injunction stage for KalshiEX, Defendants (at 17) say only that "there is nothing in the record to suggest" they will pursue enforcement against Robinhood if they lose the motion. But Defendants conspicuously do not promise that they will stop enforcing the law if the state court denies the Commonwealth's preliminary-injunction motion. That preliminary decision, which could turn on any number of factors, will not finally (or even preliminarily) resolve the underlying merits. The risk of prosecution remains "credible," even if KalshiEX prevails on the preliminary-injunction motion in state court. *See N.H. Lottery*, 986 F.3d at 52-53.

3. Finally, Defendants do not dispute that their position, if accepted, will enable state defendants to avoid federal-court resolution of questions of federal law in favor of state-court proceedings involving a different party. Defendants do not contend that a federal court could abstain from exercising jurisdiction in that scenario. *See* Robinhood Br. 40-42. Instead, Defendants (at 25-26) assert that the district court did not literally abstain. This assertion misses the point. By treating Robinhood's claim as contingent on the *KalshiEX* state-court proceedings, the district court *effectively* abstained from deciding the federal question presented to it, destabilizing the guardrails that circumscribe federal courts' ability to abstain from exercising their jurisdiction. *Cf. Mangual*, 317 F.3d at 63 ("Were we to abstain in this matter, we would merely 'await an attempt to vindicate the same claim in a state court,' and that we may not do." (quoting *McNeese v. Bd. of Educ.*, 373 U.S. 668, 672 (1963))).

The district court's approach creates a massive risk of forum-shopping. *See* Robinhood Br. 42. Robinhood invoked federal jurisdiction by filing a claim arising under federal law in federal court. The district court's decision allows Defendants' stipulations to upend Robinhood's choice of forum, opening the gates to state defendants stipulating their way out of federal-court lawsuits

whenever they initiate a state-court enforcement proceeding against a different party. But "[t]hat the defendants may prefer to have the federal constitutional ruling made by a [state] court rather than by a federal court is of no moment." *Mangual*, 317 F.3d at 63 (discussing abstention). Defendants have not identified any case applying ripeness principles to facilitate such forum shopping, and this Court should not be the first.[2]

### B. Robinhood Satisfies the Hardship Prong

The hardship prong can be satisfied by a "showing that the challenged statute, fairly read, thwarts implementation" of a party's "concrete plans to engage immediately (or nearly so) in an arguably proscribed activity." *Whitehouse*, 199 F.3d at 33. Robinhood easily clears this hurdle. *See* Robinhood Br. 32-34. The district court's decision to delay adjudication forces Robinhood to confront the "direct and immediate dilemma" of choosing between defying Defendants' interpretation of state law on the one hand and forgoing what it believes is legal activity on the other. *Whitehouse*, 199 F.3d at 34 (citation omitted).

[2] Defendants confine their arguments to constitutional fitness and do not contest (at 21) that Robinhood's claim is prudentially fit because it presents a pure question of law. *See* Robinhood Br. 31-32.

Defendants' arguments on the hardship prong (at 21-23) merely regurgitate their arguments on the fitness prong. They contend that the district court's decision to withhold adjudication does not impose any hardship on Robinhood because their stipulations eliminate the present threat of enforcement and it is unclear if they will exercise their discretion to initiate an enforcement action. For the reasons explained above, those arguments are wrong.

Just as the New Hampshire Lottery did not "have to operate under a dangling sword of indictment while DOJ purports to deliberate," 986 F.3d at 53, Robinhood should not have to wait for Defendants to decide whether to enforce their interpretations of Massachusetts law in light of the *KalshiEX* litigation. Defendants' attempt to distinguish *New Hampshire Lottery* (at 22-23) fails for all the same reasons discussed above. *See supra* pp. 8-12.

*Labor Relations Division of Construction Industries of Massachusetts, Inc. v. Healey*, 844 F.3d 318 (1st Cir. 2016) (cited at Defs.' Br. 23), does not help Defendants. In *Healey*, the plaintiffs-employers sought relief from future legal actions to enforce Massachusetts' sick-leave law by either the attorney general or their potentially aggrieved employees, arguing that federal labor law would preempt those actions. 844 F.3d at 327. But their preemption claim

could succeed only if the future legal actions asserted rights "rooted" in the collective bargaining agreement between the employers and the union representing their employees. *Id.* at 324. Resolving that question would involve issues of fact and law in each future legal action and require "claim-specific preemption analysis." *See id.* at 324, 327-28. Because no legal actions had been brought yet, the contours of the dispute were "hypothetical and abstract." *Id.* at 330.

There is nothing hypothetical or abstract about the contours of this dispute. Defendants' position on the application of Massachusetts law to trading of event contracts is settled: Defendants believe that Robinhood is presently violating Massachusetts law. Defendants' "coyness" about whether they will eventually sue or prosecute Robinhood, *N.H. Lottery*, 986 F.3d at 52, forces Robinhood to operate its business under the sword of Damocles. That is quintessential hardship.

### C. Robinhood's Plans To Offer Event Contracts Through Rothera Independently Render Its Claim Ripe

In all events, Defendants' stipulations apply only to event contracts traded on KalshiEX and ForecastEx. Defendants never stipulated to forgo enforcement if Robinhood offers its Massachusetts customers sports-related event contracts via any other exchange. *See* JA31, JA153 (stipulation "does

not restrict action concerning other conduct[] [or] entities"). Thus, Defendants' stipulations do not apply to Robinhood's current and future offerings through Rothera. Robinhood's "concrete plans to engage immediately (or nearly so) in an arguably proscribed activity" independently satisfy ripeness's requirements. *Whitehouse*, 199 F.3d at 33.

1. Robinhood's Rothera plans are not, as Defendants put it (at 29), "prospective and undefined," nor do Defendants cite any support for that characterization. In opposing Defendants' renewed motion to dismiss, Robinhood submitted a declaration from Adam Hickerson, Robinhood's Chief Operating Officer, averring that Robinhood had taken concrete steps toward "offer[ing] sports-related event contracts on one or more additional DCMs." JA162, ¶ 5. In particular, Mr. Hickerson averred that Robinhood's parent company, Robinhood Markets Inc., had formed a joint venture in November 2025 to operate a futures and derivatives exchange and clearinghouse. JA162, ¶ 6. He explained that, on January 20, 2026, "the joint venture … closed on a transaction to acquire 90% of the equity in Rothera, a DCM." JA162, ¶ 6. And he further averred that "Robinhood plans to offer sports-related event

contracts through Rothera's DCM," "targeting launching event contracts trading on Rothera by June 2026." JA162, ¶¶ 7-8.[3]

In other words, Robinhood alleged that it had plans to expand its current, concrete activities offering sports-related event contracts through KalshiEX to Rothera's DCM in the immediate future. Under this Court's precedent, Robinhood's demonstrated *plan* to engage in arguably proscribed conduct demonstrates fitness. *See, e.g.*, *Jensen v. R.I. Cannabis Control Comm'n*, 160 F.4th 18, 23-25 (1st Cir. 2025) (fitness prong satisfied where plaintiff submitted declaration averring intention to apply for Rhode Island cannabis license and that she had applied for cannabis licenses in other states). Defendants' suggestion (at 28) that Robinhood must submit "evidence of

[3] In fact, those well-publicized plans have already come to fruition, as Robinhood has begun offering sports-related event contracts on Rothera. *See Robinhood Routes Prediction Market Trades Through Rothera Exchange*, SCCG Mgmt. (June 5, 2026), https://sccgmanagement.com/sccg-articles/2026/06/05/robinhood-routes-prediction-market-trades-through-its-own ("Robinhood has started routing customer prediction market trades through Rothera, its new CFTC-regulated exchange developed with Susquehanna."); *Robinhood Reports Second Quarter 2026 Results*, Robinhood (July 29, 2026), https://investors.robinhood.com/static-files/2f42ce10-59b7-4880-8371-7d52ede7c22e ("Prediction Markets reached a new milestone with the launch of Rothera in June, … with over 3.5 billion contracts traded to date.").

contracts it has actually listed" on Rothera to establish ripeness has no support in this Court's case law.[4]

Defendants (at 29-30) suggest that Robinhood's plan to offer contracts on Rothera was an "afterthought" in the district court. Whatever that means, it is irrelevant: the record is what it is, and it demonstrates Robinhood's plans to offer event contracts on Rothera. In any event, Defendants' characterization is inaccurate. When Robinhood moved for reconsideration on December 8, 2025, it filed a proposed amended complaint. Dist. Ct. Dkt. 76-2. After the district court granted the motion for reconsideration and reopened the case, Robinhood filed the proposed amended complaint as its amended complaint. Dist. Ct. Dkt. 86; Dist. Ct. Dkt. 88. Robinhood could not have mentioned its plans for Rothera in its proposed amended complaint in December 2025 because Robinhood's parent company did not acquire an interest in Rothera until more than a month later in January 2026. JA162, ¶ 6. Robinhood then brought its Rothera plans to the court's attention at the first

[4] In a footnote (at 28 n.6), Defendants claim that "Robinhood's experience with ForecastEx underscores why such vague assertions are insufficient," claiming that "business plans in this industry shift quickly." In fact, what Robinhood's experience with ForecastEx demonstrates is that prompt federal-court adjudication of this lawsuit is necessary to provide clarity to the market.

opportunity on March 3, 2026, in response to Defendants' renewed motion to dismiss. Not only did Robinhood submit a declaration detailing its plans, its opposition to Defendants' motion also highlighted those plans. *See* JA162; Dist. Ct. Dkt. 105 at 1, 4 & n.2 (arguing that Robinhood's claim is justiciable because it "does not depend at all on what happens with Kalshi," and noting that Robinhood "plans to launch a new partnership with Rothera by June 2026").[5] Defendants' stipulations do not cover this planned conduct, and the district court erred in overlooking it.

2. Defendants (at 29) also argue that Robinhood's Rothera allegations do not establish ripeness because they rely on "conjecture" about how Defendants "would react to a hypothetical future offering atop the contingencies the district court identified." But Defendants never say or even suggest that they believe Massachusetts law would not apply to Robinhood's event contract offerings through Rothera. They (at 29) cite *Whitehouse* for the principle that the "government's established legal position" must create a "live collision" with a plaintiff's intended conduct, but the government's

[5] Defendants do not dispute that this declaration was properly part of the record before the district court in deciding Defendants' motion to dismiss for lack of jurisdiction. *See* Robinhood Br. 24.

"established legal position" is that sports-related event contracts (Robinhood's intended conduct) violate Massachusetts law.

3. Defendants' argument (at 28-29) that Robinhood's argument "elide[s] distinctions between corporate entities" is completely off base. Defendants claim that Robinhood is relying on its corporate parent's actions to satisfy ripeness, pointing out that the parent entity owns an interest in Rothera through a joint venture. But the relevant conduct is not the parent entity's interest in Rothera, but *Robinhood's* plans, as a futures commission merchant, to offer sports-related event contracts trading on that DCM. In his declaration, Mr. Hickerson made clear that Robinhood, not its parent entity, will offer those trades. JA162, ¶ 7.

4. Grasping at another chance to stipulate their way out of a ripe claim, Defendants (at 30-31) as a last resort ask this Court to remand the case to the district court for further consideration of their ripeness arguments if the Court determines that "material factual developments since judgment entered" may affect ripeness. But Robinhood's plans to offer event contracts on Rothera are not a postjudgment material factual development, nor do they even postdate the briefing below. *See supra* pp. 21-22. In arguing to the contrary, Defendants point to Robinhood's citation in its appeal brief of an

April 2026 earnings-call transcript about the impending launch of the Rothera joint venture, *see* Robinhood Br. 13 n.7, but that announcement was entirely consistent with Robinhood's pre-judgment declaration and does not amount to a "fundamental change in the facts of the case since the appeal was first filed and briefed," *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 953 F.3d 154, 158 (1st Cir. 2020). The district court overlooked evidence that was properly before it and dismissed Robinhood's claim. This error demands reversal so that Robinhood's claim can be adjudicated on the merits, not a remand for further consideration of ripeness (and yet another stipulation).

* * *

Defendants do not address Robinhood's standing arguments, thus implicitly conceding that if Robinhood's claim is ripe, Robinhood also has standing. That concession is correct for all the reasons Robinhood explained in its opening brief. *See* Robinhood Br. 43-47. Robinhood has established an injury in fact based on the threat of future enforcement; the substantial risk of harm to Robinhood is obviously traceable to the "existence and threatened enforcement of" the Commonwealth's sports wagering laws, which Defendants maintain prohibit Robinhood's conduct, *N.H. Right to Life Pol.*

*Action Comm. v. Gardner*, 99 F.3d 8, 17 (1st Cir. 1996); and Robinhood's injury is likely to be redressed by an injunction against enforcing these laws.

## II. Robinhood Has Properly Alleged Its *Ex Parte Young* Claim

Defendants alternatively ask this Court to affirm on the merits even if it finds that Robinhood's claims are ripe, arguing (at 31-34) that Robinhood's *Ex parte Young* claim is unavailable as a matter of law. Defendants' failure to cross-appeal forecloses this argument. In any event, this argument is little more than a repackaging of Defendants' ripeness arguments, and it fails for the same reasons. If the Court concludes that Robinhood's claim is ripe and that Robinhood has standing, then it should reject Defendants' alternate ground for affirmance.

1. As a preliminary matter, Defendants' failure to cross-appeal forecloses this argument. Affirmance on the merits would convert the jurisdictional, without-prejudice dismissal to a with-prejudice dismissal on the merits. Defendants must cross-appeal to convert a jurisdictional dismissal to a merits dismissal. *See Wilkins*, 93 F.4th at 43; *Delgado-Caraballo v. Hosp. Pavía Hato Rey, Inc.*, 889 F.3d 30, 39 n.15 (1st Cir. 2018).

2. Even if this argument were properly before the Court, the Court should reject it. Defendants' merits argument merely regurgitates their ripeness argument, and it fails for the same reasons.

*Ex parte Young* creates an exception to the Eleventh Amendment's "bar on suits in federal court against state officials." *Cotto v. Campbell*, 126 F.4th 761, 767 (1st Cir. 2025), *cert. denied*, 146 S. Ct. 1491 (2026). "[U]nder *Ex parte Young*, the Eleventh Amendment permits federal courts to issue prospective relief that enjoins state officials from committing future violations of federal law, but not retrospective relief that 'make[s] reparation for the past.'" *Id.* (alteration in original) (quoting *Edelman v. Jordan*, 415 U.S. 651, 664-65 (1974)). Crucially, *Ex parte Young* claims extend to claims involving the Supremacy Clause: "if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015).

Defendants (at 31-32) suggest that Robinhood's claim fails because Robinhood purportedly brought suit directly under the Supremacy Clause rather than citing *Ex parte Young* in its complaint. But Defendants cite no

case suggesting that Rule 8 requires a plaintiff to cite *Ex parte Young* in its complaint to state a claim.

Rather, plaintiffs state a claim under *Ex parte Young* by "(1) 'alleg[ing] an ongoing violation of federal law' by a state official and (2) 'seek[ing] relief properly characterized as prospective.'" *Cotto*, 126 F.4th at 767-68 (footnote omitted) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). The former element requires that a violation of federal law be "imminen[t]." *Aroostook Band of Micmacs v. Ryan*, 404 F.3d 48, 65 (1st Cir. 2005), *abrogated on other grounds by Narragansett Indian Tribe v. Rhode Island*, 449 F.3d 16 (1st Cir. 2006).

Defendants (at 32-34) challenge only the imminence element. At the pleading stage, however, the "imminence requirement" merely requires that the plaintiff satisfy Article III's jurisdictional ripeness and standing requirements. *See id.* (plaintiffs alleged imminence by "adequately alleg[ing] a threat of enforcement which would satisfy any jurisdictional requirement" of ripeness and standing). If this Court concludes that Robinhood's claim is ripe and that it has standing, it should also conclude that Robinhood's *Ex parte Young* claim is available as a matter of law.

3. Defendants' stipulations do not change this outcome. First, as already discussed, they do not cover Robinhood's concrete plans to offer additional sports-related event contracts on Rothera, which independently satisfy Robinhood's ripeness and standing requirements. *See supra* pp. 18-25.

Second, Defendants ignore that they are actively enforcing their view of the Commonwealth's sports wagering laws against KalshiEX, distinguishing this case from those on which they rely (at 33-34). In *Minnesota RFL Republican Farmer Labor Caucus v. Freeman*, for example, "the defendants [had] not enforced nor [had they] threatened to enforce the challenged statute." 33 F.4th 985, 991 (8th Cir. 2022). Thus, the defendants' "failure to disavow future prosecutions [was] not fatal to their claim of Eleventh Amendment immunity." *Id.* at 991-92. Similarly, in *Mi Familia Vota v. Ogg*, the defendant had "never enforced the challenged provisions in the past" and "attested that she [would] not attempt to enforce the challenged provisions"—at all—until the suit ended. 105 F.4th 313, 330 (5th Cir. 2024).

Likewise, *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412 (6th Cir. 1996), offers no support to Defendants: the plaintiffs there did not "seek to *enjoin* the enforcement of an allegedly unconstitutional statute," but rather sought to "strik[e] down those provisions of the statutes which

prevent their enforcement with respect to persons against whom the plaintiffs believe enforcement is proper." *Id.* at 1416. Unsurprisingly, the Sixth Circuit concluded that the attorney general had not "threaten[ed] to commence and was not about to commence proceedings against the plaintiffs," so plaintiffs could not avail themselves of *Ex parte Young*'s exception to Eleventh Amendment immunity. *Id.* (footnote omitted).

These Defendants have already demonstrated their willingness to enforce their interpretation of the Commonwealth's sports-wagering laws. *See supra* pp. 4-5. This satisfies *Ex parte Young*'s threat-of-enforcement requirement. *See, e.g.*, *Walden v. Kosinski*, 153 F.4th 118, 133-34 (2d Cir. 2025) (*Ex parte Young* action available even though defendants disclaimed intent to enforce challenged provisions against plaintiff because of "defendants' continued interest in defending the constitutionality" of the provisions); *see also King v. Youngkin*, 122 F.4th 539, 544-45 (4th Cir. 2024) (*Ex parte Young* action available for "threatened enforcement action" where plaintiffs alleged they wished to register and vote, Virginia law required denying their voter applications, and plaintiffs would be subject to prosecution if they registered and voted).

Robinhood's *Ex parte Young* claim is available for the same reasons that this case is ripe and that Robinhood has standing. This Court should reject Defendants' arguments to the contrary.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's judgment dismissing this action.

Respectfully submitted,

LISA S. BLATT
AMY MASON SAHARIA
NOAH C. MCCULLOUGH
KATHARINE E.W. PINCUS
WILLIAMS & CONNOLLY, LLP
*680 Maine Avenue, S.W.*
*Washington, DC 20024*
*(202) 434-5000*
*lblatt@wc.com*

*Counsel for Plaintiff-Appellant Robinhood Derivatives, LLC*

NICHOLAS J. SCHNEIDER
CRAIG R. WAKSLER
ECKERT SEAMANS CHERIN & MELLOTT LLC
*2 International Plaza, 16th Fl.*
*Boston, MA 02110*

August 10, 2026

**CERTIFICATE OF COMPLIANCE**
**WITH TYPEFACE AND WORD-COUNT LIMITATIONS**

I, Lisa S. Blatt, counsel for plaintiff-appellant Robinhood Derivatives, LLC, and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(g), that the attached Reply Brief of Plaintiff-Appellant Robinhood Derivatives, LLC is proportionately spaced, has a typeface of 14 points, and contains 5,880 words.

/s/ *Lisa S. Blatt*
LISA S. BLATT

August 10, 2026

## CERTIFICATE OF SERVICE

I, Lisa S. Blatt, counsel for plaintiff-appellant Robinhood Derivatives, LLC, certify that, on August 10, 2026, a copy of the attached Reply Brief of Plaintiff-Appellant Robinhood Derivatives, LLC, was filed with the Clerk and served on the parties through the Court's electronic filing system. I further certify that all parties required to be served have been served.

/s/ *Lisa S. Blatt*
LISA S. BLATT